## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DELBERT SOSEEAH, for himself and others
similarly situated, MAXINE SOSEEAH, for herself
and others similarly situated, DAVID ARELLANES,
for himself and others similarly situated, DANIEL
ARELLANES, for himself and others similarly
situated, and JOHN BORREGO, for himself and
others similarly situated,

       Plaintiffs,

vs.                                 Civ. No. 12-1091 RB/ACT

SENTRY INSURANCE, a mutual company,
and any other related business entities including
parent companies, consolidated tax filers and
subsidiaries including DAIRYLAND INSURANCE
COMPANY, PEAK PROPERTY AND CASUALTY
INSURANCE COMPANY, and VIKING
INSURANCE COMPANY OF WISCONSIN,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' First Motion to Compel

Discovery From Defendant Sentry Insurance, a Mutual Company, ("Motion") filed July 23,

2013. [Doc. 66.] On August 9, 2013, Defendant Sentry Insurance ("Defendant") filed its

Response ("Response"). [Doc. 69.] On August 22, 2013, Plaintiffs filed their Reply ("Reply").

[Doc. 73.] On August 22, 2013, a Notice of Completion of Briefing was filed. [Doc. 74.]

## PROCEDURAL AND FACTUAL BACKGROUND

On September 18, 2012, Plaintiffs filed a Class Action Complaint for Breach of

Statutory, Common Law and Contractual Duties, and Breach of Duty of Good Faith and Fair

Dealing, for Compensatory and Punitive Damages, and for Injunctive and Declaratory Relief

("Complaint") in the First Judicial District Court, County of Santa Fe, State of New Mexico. [Doc. 1-1.] The action was filed on behalf of Plaintiffs and "all other New Mexicans similarly situated as a result of Sentry's denial of the benefits of UM/UIM coverage for failure to extend the benefits of that coverage to Plaintiffs and similarly situated New Mexico insureds." [Doc. 1-1 at 2.]  Plaintiffs named Sentry Insurance Company and its subsidiaries Dairyland Insurance Company, Peak Property and Casualty Insurance Company, and Viking Insurance Company of Wisconsin as Defendants. [Id.] On October 22, 2012, Defendants filed a Notice of Removal based upon the Class Action Fairness Act pursuant to 28 U.S.C. § 1332(d), and pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446. [Doc. 1.] On January 17, 2013, the Court entered its Order Adopting Joint Status Report and Provisional Discovery Plan With Changes and Setting Case Management Deadlines. [Doc. 18.] Pursuant to that Order, discovery was bifurcated with discovery on the basis of class certification to occur first, to be followed by merits discovery after the class certification issue has been resolved. [Id.] The Motion to Compel before the Court involves class certification discovery.

## RELEVANT LAW

### A.   Scope and Relevance of Discovery

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  Federal courts have held that the scope of discovery under Rule 26 is deliberately broad.  "The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial."  *Hickman v. Taylor*, 329 U.S. 495, 501 (1974); *see Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995); *Sanchez v. Matt*, 229

F.R.D. 649, 654 (D.N.M. 2004 (Browning, J.) ("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information.").

A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." *McGee v. Hayes*, 43 Fed.Appx. 214, 217 (10th Cir. 2002)(unpublished). *See Tottenham v. Trans World Gaming Corp*., 2002 WL 1967023, at *2 (S.D.N.Y. 2002) (Knapp, J.) ("Discovery, however, is not intended to be a fishing expedition, bur rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.")(citation omitted)). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez v. Martin Marietta Corp*., 50 F.3d at 1520.  The court may forbid the disclosure of discovery, specify terms for the disclosure of discovery, forbid inquiry into certain matters, or limit the scope of disclosure or discovery to certain matters to protect a party from undue burden and expense.  Fed. R. Civ. P. 26(c)(1).

Courts have recognized that, while it is true that relevance in discovery is broader than that required for admissibility at trial, the "object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Electronics Corp. v. Exzec, Inc.*, No. 93 C 5041, 1998 WL 9181, at *2 (N.D.Ill. 1998)(quoting *Piacenti v. General Motors Corp*., 173 F.R.D. 221, 223 (N.D.Ill. 1997)).  Further, the information must be "reasonably calculated to lead to the discovery of admissible evidence." *Id*. Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.*

3

Rule 26 was amended in 2000 to state that the material requested must be "relevant to the claim or defense of any party," and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  Fed. R. Civ. P. 26(b)(1).  The Advisory Committee explained that the amendment was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery."  Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment (stating that the amendment was made with the intent "that the parties and the court focus on the actual claims and defenses involved in the action").  The Advisory Committee further explained:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses, and if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action.  The good-cause standard warranting broader discovery is meant to be flexible.

Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment.

### B.  Interrogatories and Requests for Production

Rule 33 requires a party to answer an interrogatory "separately and fully . . ., unless it is objected to, in which event the objecting party . . . shall answer to the extent the interrogatory is not objectionable."  Fed. R. Civ. P. 33(b)(1).  Likewise, Rule 34 requires a party on whom a request for production is served to "state . . . that inspection and related activities will be permitted as requested, unless the request is objected to . . . .  If an objection is made to part of an item or category, that part shall be specified and inspection permitted of the remaining parts."  Fed. R. Civ. P. 34(b).  Rule 33 also provides: "all grounds for an objection to an interrogatory shall be stated with specificity."  Fed. R. Civ. P. 33(b)(4).  "The burden is on the objecting party to show why an interrogatory is improper."  8A Charles A. Wright, Arthur R. Miller & Richard

L. Marcus, Federal Practice & Procedure § 2173, at 291-92.  The objecting party is required to

"show specifically how, despite the broad and liberal construction afforded the federal discovery

rules, each question is overly broad, burdensome, or oppressive by submitting affidavits or

offering evidence revealing the nature of the burden."  *Design Basics, L.L.C. v. Strawn*, 271

F.R.D. 513, 519 (D.Kan. 2010)(quoting *Allianz Ins. Co. v. Surface Specialities, Inc*., 2005 WL

44534, at *2 (D.Kan. Jan. 7, 2005)(unpublished opinion).

### C.    Motions to Compel

Rule 37 provides enforcement mechanisms for Rules 33 and 34.  Federal Rule of Civil

Procedure 37(a)(1) provides in pertinent part, "[A] party may move for an order compelling

disclosure or discovery.  The motion must include a certification that the movant has in good

faith conferred or attempt to confer with the person or party failing to make disclosure or

discovery."  Additionally, if a party does not respond to an interrogatory or to a request for

production, the party requesting the discovery may move the Court to compel the opposing party

to respond.  See Fed. R. Civ. P. 37(a)(2)(B).  "[A]n evasive or incomplete disclosure, answer, or

response is to be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(3).  If

the Court grants the motion to compel,

> [t]he court shall, after affording an opportunity to be heard, require the party . . .
> whose conduct necessitated the motion or the party or attorney advising such conduct
> or both of them to pay to the moving party the reasonable expenses incurred in
> making the motion, including attorney's fees, unless the court finds that the motion
> was filed without the movant's first making a good faith effort to obtain the
> disclosure or discovery without court action, or that the opposing party's
> nondisclosure, response, or objection was substantially justified, or that other
> circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(A).

**D.      Rule 23 Class Certification Requirements and Discovery Related Thereto**

At this stage of the case, the issue is whether the proposed discovery is relevant to class

certification.  *In re Urethane Antitrust Litigation,* 2006 WL 2620347 (D.Kan. Aug. 26, 2006).

Notably, discovery on class certification is not a matter of ascertaining whether plaintiff will

prevail on the merits, but whether the moving party can establish the discovery is pertinent to

Fed. R. Civ. P. 23 class certification requirements.  A consideration of the merits, to a certain

extent, is inextricably intertwined with the Rule 23 requirements of commonality and typicality.

*Id.*  The recognized need for pre-certification discovery is subject to limitations which may be

imposed by the court, and any such limitations are within the sound discretion of the court.

*Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 304-305 (D.Colo. 1998).  "The discovery

which is permitted should be sufficiently broad that the plaintiffs have a fair and realistic

opportunity to obtain evidence which will meet the requirements of Rule 23, yet not so broad

that the discovery efforts presented an undue burden to the defendant.  Discovery is not to be

used as a weapon, nor must discovery on the merits be completed precedent to class

certification."  *Id.*

Rule 23 provides the requirements for certifying a class under the federal rules. All

classes must satisfy the prerequisites under Rule 23(a).  Additionally, a class must satisfy one of

the three sets of requirements under Rule 23(b). The plaintiff bears the burden of showing that

the requirements are met. *See Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir.1988)("A party

seeking to certify a class is required to show ... that all the requirements of [Rule 23(a) ] are

clearly met."). *See also Shook v. El Paso County*, 386 F.3d 963, 968 (10th Cir.2004)("Although

the party seeking to certify a class bears the burden of proving that all the requirements of Rule

23 are met, the district court must engage in its own 'rigorous analysis' of whether 'the

prerequisites of Rule 23(a) have been satisfied.' ")(quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), and citing *Reed v. Bowen*, 849 F.2d at 1309)). The Court must accept a plaintiff's substantive allegations as true, but it "need not blindly rely on conclusory allegations which parrot Rule 23," and "may consider the legal and factual issues presented by plaintiff's complaints." *Shook v. El Paso County*, 386 F.3d at 968 (citing *J.B. v. Valdez*, 186 F.3d 1280, 1290 n. 7 (10th Cir.1999); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). *See Rutstein v. Avis Rent–A–Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir.2000)("Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues."). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir.1982). *See Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir.2009)("We, of course, adhere to the principle that class certification does not depend on the merits of a suit.").

**<u>Class Prerequisites</u>**

All classes must satisfy the prerequisites under rule 23(a):

(a)     Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1)     the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

7

> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### 1. Numerosity

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable. Some courts have held that numerosity may be presumed at a certain number; the United States Court of Appeals for the Tenth Circuit, however, "has never adopted such a presumption." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir.2006). The Tenth Circuit has stated that there is "no set formula" to determine whether the numerosity requirement is met; instead, it is a fact-specific inquiry best left to the district court's discretion. *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir.1978). *Cf. Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 624 (5th Cir.1999)(finding that proposed class consisting of "100 to 150 members ... is within the range that generally satisfies the numerosity requirement"). In determining whether a proposed class meets the numerosity requirement, "the exact number of potential members need not be shown," and a court "may make 'common sense assumptions' to support a finding that joinder would be impracticable." *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D.Colo.2002) (citation omitted). *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n. 1 (6th Cir.1997)(noting that rule 23(a)(1) is not a " 'strict numerical test' "; holding, however, that, where class comprises over 1,100 persons, suggestion that joinder is not impractical is "frivolous") (citation omitted); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993)("[T]he difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable." (citing 1 Herbert B. Newberg, Newberg on Class Actions § 3.05, at 141–42 (2d ed. 1985))). "Satisfaction of the numerosity requirement does not require that joinder is

8

impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required."  *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 384 (D.Colo.1993). *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993)("Impracticable does not mean impossible.").

2.   **Commonality**

To meet the "commonality" requirement, members of a putative class must "possess the same interest and suffer the same injury."  *Thompson v. Jiffy Lube Int'l, Inc*., 250 F.R.D. 607, 620 (D.Kan. 2008)(quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).  "A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees."  *Id.* (quoting *Thorn v. Jefferson-Pilot Life Ins*. Co., 445 F.3d 311, 319 (4th Cir. 2006)).  A question is not common, by contrast, if its resolution "turns on a consideration of the individual circumstances of each class member."  *Id.*  "The significance of commonality is self-evidence: it provides the necessary glue among class members to make adjudicating the case as a class worthwhile."  *Id.* (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3rd Cir. 2001)).  The threshold for commonality is not high, and does not require that class members share every factual and legal predicate.  *Id.*  A single common issue of fact or law shared by the class will satisfy the requirement of Rule 23(a)(2).  *Id.*  Either common questions or law or fact presented by the class will be deemed sufficient and factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exists.  *K.L. v. Valdez*, 167 F.R.D. 688, 690 (D.N.M. 1996).

### 3.   **Typicality**

A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.  *K.L.*, 167 F.R.D. at 691.  Rule 23(a)(3) precludes certification unless the claims and defenses of the representative parties are typical of the claims or defenses of the class.  *Thompson*, 250 F.R.D. at 622.  A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).  Id. Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.  *Id.*  Typicality does not require that the claims of class members be identical to the claims of the representative class plaintiffs.  *Id.* (citing *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982)).  "[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory."  *Id.* (quoting *Adamson v. Bowen*, 855 F.2d 668, 675 (10th Cir. 1988)).  The typicality requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims have the same essential characteristics as the claims of the class at large.  *Id.*

### 4.   **Adequate Representation**

"Rule 23(a) demands that the representative parties will fairly and adequately protect the interests of the class. Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir.2002). "[A] class representative must be part of the class and possess the same interest and suffer the same injury

as the class members." *E. Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97

S.Ct. 1891, 52 L.Ed.2d 453 (1977).  Adequacy of representation will be found where the named

plaintiffs have no antagonistic or conflicting interests with those of the class and where class

counsel is qualified, experienced and able to conduct the proposed litigation. Adequacy of

representation is unique in that it has a constitutional dimension, "since it would violate due

process to bind a class member to a ruling against inadequate class representatives." *Queen Uno*

*Ltd. Partnership v. Coeur D'Alene Mines Corp.*, 183 F.R.D. 687, 694 (D.Colo.,1998).

## ANALYSIS

Plaintiffs state the gravamen of their complaint as follows:

> [F]ollowing *Jordan* and *Weed Warrior*,[1] Defendants failed to take appropriate steps
> to notify their insureds that any waiver/rejection forms relating to the provision of
> uninsured motorist coverage had been declared invalid, failed to provide appropriate
> levels of coverage to such insureds,  and sent misleading notices to policyholders,
> failing to notify them that they had UM/UIM coverage because their policies were
> reformed by *Jordan* and *Weed Warrior* while at the same time requiring that they
> sign new forms admonishing that their premiums would be increased.

[Doc. 66 at 2.]   As previously stated, at this stage of the case, the only question is whether any

of the proposed discovery is relevant to a class certification issue.  Notably, discovery on class

certification is not a matter of ascertaining whether Plaintiffs will prevail on the merits, but

whether the moving party can establish that the discovery is pertinent to the class certification

requirements of Fed. R. Civ. P. 23.

As a preliminary matter, the Court addresses two issues generally.  First, Defendants

objected to Amended Interrogatories Nos. 1, 1A, 3, 4, 5 and 15 on the grounds that the

---

[1]  *Jordan v. Allstate Insurance Company*, 2010-NMSC-051, 149 N.M. 162, 256 P.3d 1214 and *Progressive Northwestern Insurance Company v. Weed Warrior Services*, 2010-NMSC-050, 159 N.M. 157, 245 P.3d 1209, in which the New Mexico Supreme Court held that insurance companies are obligated to provide uninsured motorist and underinsured motorist coverage limits at the same level of coverage as liability limits, absent a legally valid rejection.

interrogatories contained multiple, separate and distinct interrogatories.  The Advisory

Committee Notes for Rule 33 address this issue as follows:

> Each party is allowed to serve 25 interrogatories upon any other party, but must
> secure leave of court (or a stipulation from the opposing party) to serve a larger
> number.  Parties cannot evade this presumptive limitation through the device of
> joining as "subparts" questions that seek information about discrete separate
> subjects.  However, a question asking about communications of a particular type
> should be treated as a single interrogatory even though it requests that the time,
> place, persons presents, and contents be stated separately for each such
> communication.

Fed. R. Civ. P. 33 Advisory Committee Notes (1993 Amendment).  Interrogatories containing

subparts directed at eliciting details concerning a "common theme" should generally be

considered a single question.  *Swackhammer v. Sprint Corporation PCS*, 225 F.R.D. 658, 664

(D.Kan. Dec. 13, 2004)(quoting 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus,

Federal Practice and Procedure, § 2168 at 261 (2d ed. 1994)).   Interrogatories which contain

subparts that inquire into discrete areas should, in most cases, be counted as more than one

interrogatory.  *Id.*   In the case at hand and with these standards in mind, the Court finds that

Plaintiffs' Amended Interrogatory No. 5 constitutes two separate interrogatories.  In each of the

remaining interrogatories, the subparts all relate to a common theme and are considered single

interrogatories.

Second, the Court notes that the Defendants both objected and responded in each of its

answers and responses discussed herein, but responded "subject to and without waiving its

objections."  Rule 34 makes no provision for this type of response.  As pointed out by Plaintiffs,

the harm of this sort of objection is that it leaves the proponent unsure if information is being

withheld.  The Court agrees.  A party may object to some or all of the requested discovery, but it

must be clear whether the responding party is objecting or not and, if objecting, to what part of

the request and on what specific grounds. *Leisure Hospitality, Inc. v. Hunt Properties, Inc*.,
2010 WL 3522444 (N.D.Okla. Sept. 8, 2010)(unpublished opinion)(citing generally <u>8B Charles
Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure §2213</u> (3d
ed. 2010).

      1.      The parties address Amended Interrogatory Nos. 1 and 1A together.  Therefore,
the Court will address them together here.

### Amended Interrogatory No. 1:

Please state whether Sentry created the insurance policies and waiver/rejection forms
for uninsured/underinsured motorist ("UM/UIM") coverage that were used by the
other Defendants, Dairyland Insurance Company, Peak Property and Casualty
Insurance Company, and Viking Insurance Company of Wisconsin prior to the
New Mexico Supreme Court's decisions in *Jordan* and *Weed Warrior*.  If so, please
identify all such uniform policies and forms, identify the individuals who created
such uniform policies and forms, and describe how such uniform policies and forms
were distributed to the other Defendants by Sentry for use, including whether Sentry
provided the other Defendants with instructions, policies, and/or procedures for how
to use the policies and forms.

### Amended Interrogatory No. 1A:

Please state whether, after the New Mexico Supreme Court's decisions in *Jordan* and
*Weed Warrior*, Sentry created the insurance policies and waiver/rejection forms for
UM/UIM coverage that were/are used by the other Defendants, Dairyland Insurance
Company, Peak Property and Casualty Insurance Company, and Viking Insurance
Company of Wisconsin.  If so, please identify all such uniform policies and forms,
identify the individuals who created such uniform policies and forms, and describe
how such uniform policies and forms were/are distributed to the other Defendants
by Sentry for use, including whether Sentry provides the other Defendants with
instructions, policies, and/or procedures for how to use the policies and forms.

Defendants objected to these interrogatories on grounds that they contain multiple
interrogatories, are overly broad and unduly burdensome, and are not reasonably calculated to
lead to the discovery of admissible evidence insofar as it is not limited in time and seeks
information that has no bearing on class certification.  Notwithstanding its objections, Sentry

states that it did not create the insurance policies and waiver/rejection forms for UI/UIM

coverage that were used by the subsidiary Defendants.

        In their Motion, Plaintiff argues that Sentry has failed to answer the interrogatories on

behalf of *all* Defendants as it represented it would do in its "General Objections and Responses."

[Doc. 66 at 8.]  Plaintiff further argues that Sentry has too narrowly construed the word "create,"

and that its answer is in direct conflict with information published in its Sentry Procedure

Bulletin that evidences Sentry played a "role" in creating forms and policies.[2]  [Id.]  Plaintiff

also asserts that these interrogatories are relevant because they go to the issues of commonality

and typicality because this information will enable Plaintiffs to prove that the same forms were

used by all Defendants and distributed to Plaintiffs and others similarly situated in New Mexico.

[Id. at 9.]

        In its Response, Sentry contends that it explained to Plaintiffs during discovery

conferences that Sentry does not create the policies/forms used by its subsidiaries, and that each

subsidiary uses its own systems and its own forms. [Doc. 69 at 2.] Sentry also contends that the

Sentry Procedure Bulletin identified by Plaintiffs, while admittedly identifying Sentry as the

parent company, is a Dairyland Insurance Company document referring to form revisions

necessary to Dairyland's policies written in the State of New Mexico, and not to form revisions

created by Sentry for Dairyland's implementation. [Id. at 3.]  Sentry asserts there is nothing to

compel here because the answer to both interrogatories remains "no," Sentry did not create the

---

        [2]   The Sentry Procedure Bulletin, attached as Exhibit D to Plaintiffs' Motion, was filed under seal because
it has been designated as "confidential" by Sentry.  In its Response, Sentry includes the language at issue which
states, "[t]he purpose of this bulletin is to announce numerous form revisions, and an associate mass mailing of
revised forms, for Plain Talk® Auto and Plain Talk® Motorcycle policies written under Dairyland Insurance
Company in the State of New Mexico." [Doc. 69 at 3.]

insurance policies and waiver/rejection forms for uninsured/underinsured motorist coverage used by its subsidiaries either before or after the *Jordan* decision. [Id.]

In its Reply, Plaintiffs attaches a Sentry Interoffice Memorandum wherein Sentry acknowledges the New Mexico Supreme Court rulings and states that Sentry had developed a process to review losses that occurred before the rulings and to identify and contact insureds from past claims regarding potential coverage eligibility under the new rulings. [Doc. 73 at 4.] Plaintiffs assert this evidences that uniform forms were being used, even if they were put on different letterheads. [Id.]

Plaintiffs' Motion regarding Interrogatory Nos. 1 and 1A is DENIED.  While the Court finds that the information sought is relevant to the issue of commonality; *i.e.*, whether Sentry and the subsidiary Defendants provided misleading insurance policies and waiver/rejection forms for UM/UIM coverage to Plaintiffs and others similarly situated in New Mexico, the Court is not persuaded that Sentry has failed to answer the interrogatory as stated.  Plaintiffs' first argument that Sentry represented it would answer the questions on behalf of *all* Defendants fails because it misrepresents Sentry's general objections.  Sentry states in its general objections that because the interrogatories and requests for production do not differentiate between the subsidiary Defendants and Sentry, "Sentry will assume that they are directed at *any* of the listed Defendants above and Sentry's counsel will respond based on that assumption." [Doc. 66-1 at 9.] In Amended Interrogatory Nos. 1 and 1A, no assumption as to whom the interrogatory is directed is required since Plaintiffs very explicitly ask *Sentry*, and not the subsidiary Defendants, if it created the insurance policies and waiver/rejection forms for UM/UIM coverage that were/are used by the *other* Defendants, to which Sentry responded "no."  Given the clarity of Plaintiffs' question in this instance, it is unclear to the Court how this question could be answered on behalf

15

of *all* Defendants as Plaintiffs suggest.  Plaintiffs' next argument that Sentry has too narrowly construed the word "create" also fails given the context of the interrogatory subparts.  While Plaintiffs argue that they are asking more broadly for the "role" that Sentry may have played in creating insurance policies and forms, the subparts of the interrogatories ask for something very concrete; *i.e.*, actual insurance policies/forms that were created and distributed by Sentry, with instructions as to how they were to be used by the subsidiary Defendants.  Finally, Plaintiffs' argument that the Sentry Procedure Bulletin and Sentry Interoffice Memorandum evidence that Sentry created standardized insurance policies and waiver/rejection forms for use by its subsidiaries is likewise unpersuasive.  The Sentry Procedure Bulletin referred to by Plaintiffs is a compilation of revised forms for auto and motorcycle policies written under Dairyland Insurance Company in the State of New Mexico.  Likewise, the Sentry Interoffice Memorandum referred to by Plaintiffs discusses Sentry's process to review pre-*Jordan* losses and to identify past claimants for potential coverage eligibility under the new ruling.  It does not reference Sentry's creation or distribution of standardized insurance policies or waiver/rejection forms for use by its subsidiaries.

For these reasons, and because Sentry conclusively stated it did not create the insurance policies and waiver/rejection forms for UM/UIM coverage that were/are used by the other Defendants, Plaintiffs' Motion regarding Interrogatory Nos. 1 and 1A is DENIED.

2.      The parties address Amended Interrogatory Nos. 3 and 4 together.  Therefore, the Court will address them together here.

**<u>Amended Interrogatory No. 3</u>:**

Please state how many policyholders have been sent the "IMPORTANT NOTICE" in the form Bates labeled SENTRY/Soseeah 959 and explain (i) which categories of policyholders were included in such mailing, (ii) how Sentry determined which

policyholders should receive the notice, and (iii) the process by which Sentry identified those policyholders.  Please also identify the total number of waivers signed by your policyholders after receipt of the IMPORTANT NOTICE letter.

**Amended Interrogatory No. 4:**

Please state how many policyholders have been sent the "IMPORTANT NOTICE" in the form Bates labeled as SENTRY/Soseeah 934 and explain (i) which categories of policyholders were included in such mailing; (ii) how Sentry determined which policyholders should receive the notice and (iii) the process by which Sentry identified those policyholders.

Plaintiffs are asking how many policyholders Sentry notified about the changes in its UM/UIM coverage following the *Jordan* and *Weed Warrior* decisions, how Sentry identified which individuals should receive notice, and how many policyholders actually signed and returned waiver forms.  Defendants object on grounds that the interrogatories contain multiple interrogatories, are overly broad and unduly burdensome, and are not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks information that has no bearing on class certification.  Notwithstanding its objections, Sentry states that each of the "IMPORTANT NOTICE" forms were sent to all then existing policyholders.

In their Motion, Plaintiff argues that these interrogatories not only go to the issue of numerosity, but to the issues of commonality and typicality because production of this information will establish the misleading nature of Sentry's disclosure and that Sentry only sent notices to policyholders who had made prior claims, as opposed to all policyholders. [Doc. 66 at 10.]

Sentry states the Defendants have conceded numerosity thereby making discovery as to the number of policyholders notified unnecessary. [Doc. 69 at 3.] That aside, Sentry states its answer makes clear that the notices were sent to all existing policyholders for Dairyland, Viking and Peak.  Sentry asserts that "existing policyholders" includes all categories of policyholders

17

and that the process used to determine if a policyholder received notice was whether they were an "existing policyholder." [Id.]

In its Reply, Plaintiffs contend that answering "all policyholders" fails to provide the date on which notices were sent, which company sent the notices, how many notices were sent by each company, and why they decided to send notices only to then existing policyholders and not former policyholders who had signed invalid waivers. [Doc. 73 at 5.] Plaintiffs assert they are entitled to know how many policyholders responded to the notices because it will identify the class of individuals who potentially fell prey to the threat of increased premiums without knowledge of coverage to which they were entitled.

The Plaintiffs' Motion regarding Interrogatory Nos. 3 and 4 is DENIED.  Because the Defendants are not challenging class certification on numerosity grounds, the information Plaintiffs are seeking regarding how many policyholders received notice is not necessary to meet their burden of proof under the numerosity requirement of Rule 23(a).  Furthermore, whether the "Important Notice" is misleading and had the potential for causing policyholders to fall prey to the threat of increased premiums without knowledge of coverage to which they were entitled may be determined by looking at the notice itself and is not dependent on how many policyholders received and/or returned the notices.  For these reasons, Plaintiff's Motion regarding Interrogatory Nos. 3 and 4 is DENIED.

3.     The parties address Amended Interrogatory Nos. 5 and 15, and Amended Request for Production No. 9 together.  Therefore, the Court will address them together here.

**Amended Interrogatory No. 5:**

Please state whether, prior to the *Jordan* and *Weed Warrior* decisions, Sentry had uniform policies and/or procedures for the handling and use of waiver/rejection of UM/UIM coverage forms.  If so, describe what those policies and procedures

18

entailed and state whether Sentry dictated that the other Defendants follow those policies and procedures.  Describe how those policies and changed after the *Jordan* and *Weed Warrior* decisions, if at all.  State whether Sentry currently has uniform policies and/or procedures for the handling and use of waiver/rejection of UM/UIM coverage forms, specifically whether Sentry has uniform policies and/or procedures regarding (i) when and how waiver/rejection forms are delivered to policyholders, (ii) when and how the remainder of the policy is delivered to policyholders, (iii) whether the waiver/rejection forms used disclose the premium charges that correspond to each available option for UM/UIM coverage, and (iv) whether signed waiver/rejection forms are attached or otherwise made a party of the policy and delivered to policyholders, (v) and if they are attached to the policy and delivered, who is responsible for making sure that this occurs.

**Amended Interrogatory No. 15:**

Please state whether, after the *Jordan* and *Weed Warrior* decisions, Sentry put in place uniform policies and/or procedures to obtain waivers/rejections of UM/UIM coverage forms from its insureds.  If so, describe what those policies and procedures entailed and state whether Sentry mandated that the other Defendants follow those policies and procedures.  Please state whether those policies and/or procedures are in document form and if not indicate how those policies and/or procedures are recorded.  Indicate by job title or function, the intended recipients of those policies and/or procedures.

**Amended Request No. 9:**

Please provide copies of any and all policies, procedures, instructions, forms, form letters and other materials provided to or created by Defendants after the *Jordan* and *Weed Warrior* decisions, which put in place uniform policies and/or procedures to obtain new waivers/rejections of UM/UIM coverage forms from insureds.  If you contend that you have previously provided documents requested in this Request for Production, to Plaintiffs, please identify those documents by Bates' stamp number.

In these interrogatories and request for production, Plaintiffs are seeking information regarding whether Sentry developed and/or disseminated to the subsidiary Defendants any uniform policies and/or procedures for handling, using or obtaining of UM/UIM waiver/rejection forms both before and after the *Jordan* and *Weed Warrior* decisions.  Defendants object on grounds that the interrogatories contain multiple interrogatories; are vague, ambiguous and unintelligible as to what "handling and use" means; are overly broad and unduly burdensome;

and are not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding its objections, Sentry states that the same policies and/or practices are not developed or mandated by Sentry, and any policies at issue were sold through independent agents, each of whom uses their own sales practice.  Sentry also states that following the *Jordan* decision, the Sentry subsidiaries designed new rejection forms to comply with New Mexico law.

In its Motion, Plaintiffs argue that the parties discussed extensively in their first discovery conference the Plaintiffs' need to have basic information about the forms themselves and what instructions are provided for their use. [Doc. 66 at 11.]  Plaintiffs further argue that Sentry failed to answer any of the questions directly and focused instead on sales practices which is not the subject of this class action litigation.  [Id.] Plaintiffs assert that the uniformity of policies and waiver/rejection forms and any mandates for use by Sentry to the subsidiary Defendants goes to typicality and commonality. [Id.]

In its Response, Sentry restates its objections. [Doc. 69 at 4.] Sentry also restates that it did not create any uniform policies/procedures for the handling, using or obtaining of UM/UIM waiver/rejection forms for use by the subsidiary Defendants.  [Id.] In addition, Sentry asserts that the subsidiary Defendants have independent agents that use their own sales practices in presenting, discussing and delivering UM/UIM coverage options to its insureds. [Id. at 5.] Because Sentry did not put in place any uniform policies and procedures for how independent agents handled the process of obtaining UM/UIM selection/rejection forms, uniform policies and procedures do not exist and cannot be produced. [Id.]

In its Reply, Plaintiffs argue that it defies common sense that each and every independent agent had *carte blanche* to create any form they wanted and were not provided with some kind of uniform form by Sentry. [Doc. 73 at 5-6.] As such, Plaintiffs are asking this Court to direct

Sentry to state whether there was a mandate to the other Defendants to use uniform forms and who, by job title and function, were the intended recipients of the forms. [Id. at 6.] Plaintiffs are also asking that this Court order the Defendants to provide copies of all waiver/rejection forms used by all companies in order to show their similarity or dissimilarity.

Plaintiffs' Motion regarding Interrogatory Nos. 5 and 15 is DENIED because Sentry has conclusively stated it did not create any uniform policies/procedures for the handling, using or obtaining of UM/UIM waiver/rejection forms for use by the subsidiary Defendants.

Plaintiffs' Motion regarding Amended Request No. 9 is GRANTED IN PART.  The Court finds that the requested UM/UIM waiver/rejection forms are relevant to class certification; *i.e*., whether Sentry and the subsidiary Defendants sent misleading notices to policyholders with the threat of increased premiums without notifying them that they had UM/UIM coverage that had been reformed by the *Jordan* and *Weed Warrior* decisions.  However, the Court also finds that Plaintiffs' request as stated is overly broad and unduly burdensome.  Therefore, the Court will modify the request.

Sentry is ordered to produce copies of all UM/UIM coverage waiver/rejection forms used by it and the subsidiary Defendants during the calendar year 2010 prior to the *Jordan* and *Weed Warrior* decisions issued on October 18, 2010, and copies of all UM/UIM coverage waiver/rejection forms used by it and the subsidiary Defendants as modified in response to the *Jordan* and *Weed Warrior* decisions issued on October 18, 2010, and used thereafter during the calendar year 2011.

4.      **Amended Interrogatory No. 13:**

Please state whether Sentry or any of the other Defendants are presently discussing, negotiating with attorneys, and/or litigating any claims involving a demand by an insured for equalization or an assertion by an insured that a waiver/rejection of

UM/UIM coverage is invalid.  If so, please identify the insured and, for claims in litigation, please provide the case caption, case number, and case location.

Defendants object to this interrogatory on the grounds that it is unduly burdensome and seeks information regarding non-parties that is private and not relevant to the subject matter of the pending action, and is not reasonably calculated to lead to the discovery of admissible evidence.  Defendants also object because the interrogatory is not limited to New Mexico litigation, and that the information requested is overly broad and unduly burdensome because Sentry's records are not maintained in a manner which would allow it to provide such information without undertaking, at great time and expense to Sentry, a manual review of claim files to determine whether an attorney represented claim involves issues of equalization or invalid waiver/rejection.  Finally, Defendants object on the grounds that the information requested is unrelated to class certification, particularly since it has conceded numerosity.  Notwithstanding its objections, Sentry states:

> [I]t does not take the position that waivers of UM coverage prior to *Jordan* are valid and Sentry has forced coverage for such insureds if the rejection and/or selection of UM coverage did not meet the requirements set out in *Jordan*.  Thus, Sentry is unaware of any case in which it is presently discussing, negotiating with attorneys, and/or litigating any claims involving a demand by an insured for equalization or an assertion by an insured that involves a waiver/rejection of UM/UIM coverage cases that was obtained before the new forms were sent out following *Jordan* in which Sentry takes the position that the rejection is valid although it does not comply with *Jordan*.

[Doc. 66-1 at 3.]

In their Motion, Plaintiffs argue that this interrogatory is designed to potentially identify other class representatives or individuals who are disputing claims on the grounds outlined in their interrogatory, and to determine whether the claims disputed relate to the common issues of law and fact. [Doc. 66 at 13.]

In its Response, Defendants restate their objections and contend that Sentry is unaware of any cases in which it is presently discussing, negotiating with attorneys, and/or litigating any claims involving a demand by an insured for equalization or an assertion by an insured that involves a waiver/rejection of UM/UIM coverage cases that was obtained before the new forms were sent out following *Jordan* in which Sentry takes the position that the rejection is valid although it does not comply with *Jordan*. [Doc. 69 at 6.]  It is unaware of any cases because it forced coverage for insureds "if the rejection and/or selection of UM coverage did not meet the requirements set out in Jordan." [Id.]   As such, there is nothing to compel. [Id.]

In their Reply, Plaintiffs state they are entitled to know about the subclass of individuals where coverage has been "forced" because it addresses how the Defendants handled claims with policyholders who are similarly situated to Plaintiffs. [Doc. 73 at 7.]

Plaintiffs' Motion regarding Amended Interrogatory No. 13 is DENIED.  Because the Defendants are not challenging class certification on numerosity grounds, the information Plaintiffs are seeking regarding how many policyholders are disputing claims on the grounds outlined in their interrogatory is not necessary to meet their burden of proof under the numerosity requirement of Rule 23(a).  In addition, Sentry has conclusively stated it is not aware of any case in which it is presently discussing, negotiating with attorneys, and/or litigating any claims involving a demand by an insured for equalization or an assertion by an insured that involves a waiver/rejection of UM/UIM coverage cases that was obtained before the new forms were sent out following *Jordan* in which Sentry takes the position that the rejection is valid although it does not comply with *Jordan*.  Finally, the Court finds that the information sought regarding how Defendants handled claims involving demands by insureds for equalization or assertions that the waiver/rejection of UM/UIM coverage was invalid goes beyond the scope of

Amended Interrogatory No. 13 as originally stated.  For these reasons, Amended Interrogatory No. 13 is DENIED.

**Amended Request No. 17:**

Produce copies or screen shots of all indices and/or tables of contents for all claims manuals or other written or electronic policies and procedures addressing claim handling in general or the handling of UM/UIM claims specifically.

Sentry objected to this discovery request on the grounds that it is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Sentry further objected on the grounds that it seeks documents which are confidential, and/or proprietary in nature, and that constitutes trade or business secrets of Sentry and its subsidiaries and/or third parties.  Sentry further objects on the grounds that it is overly broad and unduly burdensome insofar as it is not limited to UM rejections.  Finally, Sentry objected on the grounds that it impermissibly seeks documents unrelated to class certification.  Notwithstanding its objections, Sentry stated it previously produced the Table of Contents from its claims manual.

In their Motion, Plaintiffs argue that the manual produced was not responsive because it does not address the handling of UM/UIM claims. [Doc. 66 at 13.] Plaintiffs further argue that it presumes Sentry and/or the other Defendants would have provided instructional manuals relating to the handling of UM/UIM claims given the "peculiar issues attendant to such claims." [Id.] Plaintiffs assert that these policies go to the issues of typicality and commonality regarding how the Defendants handled their claims.

In its Response, Defendants restate their objections and respond that the information sought is irrelevant to class certification. [Doc. 69 at Id.] Notwithstanding its objections, Defendants state that they provided Plaintiffs with exactly what they asked for  - a copy of the Table of Contents for its Claims Operating Procedure Manual. [Id.]

In their Reply, Plaintiffs contend that because of Defendants' blanket objections, it is impossible to know whether something exists which is being withheld or whether nothing else exists that is responsive. [Doc. 73 at 8.] Plaintiffs request this Court instruct the Defendants to remove their blanket objections and make it clear whether there are or are not additional materials that are responsive to this request. [Id.]

Plaintiffs' Motion regarding Amended Request No. 17 is GRANTED IN PART.  The Court finds that how Defendants handled UM/UIM claims is relevant to the issue for certification; *i.e.*, whether the Defendants failed to provide appropriate levels of coverage to insureds with UM/UIM coverage that had been declared invalid by *Jordan* and *Weed Warrior* decisions.  The Defendants have also constructively conceded relevancy in light of their production of the Table of Contents for its Claims Operating Procedure Manual.  The Court also agrees with the Plaintiffs that Defendants' blanket objections in this instance have left the Plaintiffs unsure if information is being withheld.  That said, the Court finds that Plaintiffs' request as stated is overly broad and unduly burdensome.  Therefore, the Court will limit the request.

Sentry is ordered to produce any non-privileged instructional documents in its possession, custody or control that were used by Sentry and/or the subsidiary Defendants to address the handling of both retroactive and new UM/UIM claims following the decisions issued in *Jordan* and *Weed Warrior* on October 18, 2010.

6.    **Amended Request No. 18:**

Produce any and all organizational charts in your possession that show the relationship between all of the Defendants with respect to who had authority to create and disseminate standard insurance policies, procedures, forms (including UM/UIM waiver and/or rejection forms) for use by all Defendants.  Also produce any and all documents that define in any manner Sentry's authority to create and

25

disseminate insurance policy forms, procedures (written or otherwise), forms (including UM/UIM waiver and/or rejection forms), declarations pages, addenda to policies, for use by the other Defendants.

Sentry objected to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it is not limited in time, seeks information that has no bearing on class certification, and contains improper factual predicates.  Notwithstanding its objections, Sentry produced its organizational chart.

In their Motion, Plaintiffs argue that the document produced does not define Sentry's authority to create and disseminate forms. [Doc. 66 at 14.]  Plaintiffs also contend that because of Defendants' blanket objections, it is impossible to know whether something exists which is being withheld or whether nothing else exists that is responsive. [Id.]

In its Response, Defendants contend that "instead of a simple interrogatory regarding company ownership, or a request for admission, or even a 30(b)(6) deposition, Plaintiffs have served an objectionable discovery request."  [Doc. 69 at 8.] That aside, Sentry produced its organizational chart which clearly explains that Sentry Insurance a Mutual Company is the parent company for various other companies. [Id.] The chart also notes that the subsidiaries listed are 100% owned by Sentry Insurance of Mutual Company, and that Peak is a subsidiary of Viking. [Id.]

In their Reply, Plaintiffs argues that their request goes toward establishing the uniformity of practices between the various companies, and as such the documents requested are clearly discoverable. [Doc. 73 at 9.]

Plaintiffs' Motion regarding Amended Request No. 18 is GRANTED IN PART.  The Court finds that establishing a uniformity of practices between Sentry and the subsidiary

26

Defendants is relevant to the issue of class certification.  Defendants have also constructively conceded the relevancy of Plaintiffs' request by producing the organizational chart.  In addition, the Court agrees with the Plaintiffs that Defendants' blanket objections in this instance have left the Plaintiffs unsure if information is being withheld.  However, the Court finds that the Plaintiffs' request as stated is overly broad; therefore, the Court will modify the request.

Sentry is ordered to produce any non-privileged documents in its possession, custody or control that define, describe, or articulate Sentry's general and/or specific authority as the parent company to determine, establish and mandate policies[3] and procedures to be followed and adhered to by the subsidiary Defendants with respect to the substance and form of its insurance policies.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' First Motion to Compel Discovery From Defendant Sentry Insurance a Mutual Company [Doc. 66] is granted in part and denied in part as set forth above.  Defendants will have twenty (20) days from the filing of this order to comply.

**ALAN C. TORGERSON**
**United States Magistrate Judge**

---

[3] To be clear, "policies" as used here is *not* to be defined as a "document embodying a contract of insurance."  Rather, the Court is using "policies" as a "course of action adopted and pursued" by Sentry as the parent company of the subsidiary Defendants.

27