IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DELBERT SOSEEAH, for himself
and others similarly situated,
MAXINE SOSEEAH, for herself and
others similarly situated, and
JOHN BORREGO, for himself
and others similarly situated.

       Plaintiffs,

v.                                No. 1:12-cv-01091 RB/GBW

SENTRY INSURANCE, A MUTUAL COMPANY,
AND ANY OTHER RELATED BUSINESS
ENTITIES INCLUDING PARENT
COMPANIES, CONSOLIDATED
TAX FILERS AND SUBSIDIARIES
INCLUDING DAIRYLAND INSURANCE
COMPANY, PEAK PROPERTY AND
CASUALTY INSURANCE COMPANY, and
VIKING INSURANCE COMPANY OF WISCONSIN,

       Defendants.

## FOURTH AMENDED CLASS ACTION COMPLAINT
## FOR INJUNCTIVE AND DECLARATORY RELIEF

COME NOW, Plaintiffs, Delbert Soseeah, Maxine Soseeah, and John Borrego, for

themselves and all other New Mexicans similarly situated, by and through their undersigned

attorneys, and for their Fourth Amended Complaint against Defendants, Sentry and any other

related business entities including parent companies, consolidated tax filers, or subsidiaries

including but not necessarily limited to, Dairyland Insurance Company, Peak Property and

Casualty Insurance Company and Viking Insurance Company of Wisconsin,  state as follows:

**Overview and Parties**

1.      This action arises out of vehicular automobile insurance policies sold by Defendant Sentry and its related entities in the State of New Mexico that did not provide uninsured/underinsured motorist ("UM/UIM") insurance coverage required by law. These policies were sold by Defendant Sentry and purchased by and issued to Plaintiffs in New Mexico and also sold by Defendants' admission to at least 36,000 similarly situated New Mexico citizens. This action is filed on behalf of Plaintiffs and all other New Mexican insurance auto policyholders who are similarly situated to Plaintiffs. The claims of the proposed class arise as a result of Defendants':  (A) Issuing policies that failed to provide UM/UIM coverage required by law; (B) Using UM/UIM rejection forms that were deceptive, inadequate and legally insufficient for the purpose of reducing Sentry's UM/UIM insurance exposure; (C) failure to properly reform those illegally issued policies when the purported rejections of UM/UIM coverage which Defendant utilized were declared legally insufficient by the New Mexico Supreme Court in October 2010, leaving many insureds without UM/UIM coverage to which they are legally entitled in direct violation of New Mexico law; (D) failure to notify their insureds of UM/UIM coverage in any form whatsoever until more than fifteen months after the New Mexico Supreme Court mandated coverage; (E) intentionally making the fifteen-month late notice finally mailed as obscure and complex as possible in an effort to limit claims and minimize Defendants' financial exposure; and (F) requiring policyholders to sign UM/UIM putative rejections within a few months of October 2010 and then using those rejections to deny UM/UIM coverage for accidents that occurred prior to the waiver being signed.

2.      Plaintiff Delbert Soseeah is currently a resident of Zuni, New Mexico in McKinley County, New Mexico.

3.      Plaintiff Maxine Soseeah is, and at all times material hereto was a resident of Zuni, New Mexico in McKinley County, New Mexico, is the wife of Plaintiff Delbert Soseeah.

4.      Plaintiff John Borrego is now and was at all times material to this Complaint a resident of Santa Fe, New Mexico in Santa Fe County, New Mexico.

5.      On information and belief, Defendant Sentry Insurance, A Mutual Company conducts business for its own account in the State of New Mexico, and is also the parent and holding company for its wholly owned subsidiaries, Dairyland Insurance Company, Peak Property and Casualty Insurance Company, and Viking Insurance Company of Wisconsin (collectively hereinafter referred to as "Defendant Sentry"). All of the Defendants are Wisconsin corporations headquartered in Stevens Point, Wisconsin, and at all times material hereto, were licensed to conduct the business of insurance in New Mexico and have for many years prior hereto and are currently engaging in the business of selling automobile insurance throughout New Mexico, including in Santa Fe County. On information and belief, Defendant Sentry files consolidated financial results, consolidated tax returns, uses identical policies and practices, relating to all Defendants, and operates identically in New Mexico in regards all matters referred to herein.

6.      Pursuant to NMSA 1978, Section 59A-5-31, the New Mexico Superintendent of Insurance has been appointed as Defendant Sentry's agent for service of process in this matter.

7.      The acts complained of herein occurred in the State of New Mexico.

8.     Defendant Sentry has removed this action to this Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1453.

**Allegations Related to the Soseeah Plaintiffs**

9.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

10.     On or about May 09, 2009, Plaintiff Delbert Soseeah was seriously injured in a vehicular collision in Zuni, County of McKinley, State of New Mexico (the "Collision").

11.     At the time of the Collision, Plaintiff Delbert Soseeah and Lance Cheama were passengers in a 2007 red Ford Pickup which was owned by Plaintiff Delbert Soseeah, but was being operated by Paulette Locaspino ("Locaspino").  Locaspino was cited for operating the vehicle recklessly, and while impaired by alcohol.

12.     While driving northbound on State Road 53, Locaspino swerved to the right shoulder and over-corrected causing the pick- up truck to roll into the opposing lane of traffic.

13.     Plaintiff Delbert Soseeah and Lance Cheama were injured and managed to escape the vehicle by breaking open the front windshield.

14.     Plaintiff Delbert Soseeah collected $25,000 in liability coverage available in connection with the Collision from Southwest General Insurance.

15.     Prior to the Collision, Plaintiffs Delbert and Maxine Soseeah entered into an insurance contract with Defendant Sentry to provide insurance on a vehicle they owned, a 2006 Pontiac Grand Prix. The Sentry insurance policy number was 315581369 (the "Policy").   Prior to the accident, the Plaintiffs also entered into a contract with Dairyland Insurance Company (another Sentry related company) #294417555, on a 2003 Ford Explorer.

16.     Plaintiffs paid the premiums for coverage on both vehicles and Defendant Sentry agreed to provide coverage.  The coverage was paid for in full and was in force on the date of the accident.

17.     At all times material hereto, Plaintiff Delbert Soseeah was a resident relative of his wife, Plaintiff Maxine Soseeah's household and was a Class 1 named insured under his Plaintiffs' Policy with Defendants.

18.     At all times material hereto, each of the insured vehicles had liability coverage under the Policy in the amounts of $25,000 per person, $50,000 per occurrence.  At the time the of the accidents, the law of New Mexico required that all policies of insurance for automobiles issued within the State were required to provide liability coverage for under-insured and uninsured motor vehicle accidents ("UM/UIM claims") to all Class 1 (policy holders) and Class 2 (household members and occupants of insured vehicles) insureds unless a valid written rejection of that additional coverage was incorporated into and made a part of the Policy. In order to be valid, such a rejection had to be in writing, had to be clear and understandable to the person purchasing the policy, had to set forth the cost of all available levels of UM/UIM coverage and the premiums for that coverage, and had to be affixed to and delivered with the policy itself. The purported rejections signed by Plaintiffs met none of these requirements and the standard forms used by Defendant were legally insufficient to constitute a valid rejection.

19.     In the fall of 2010, the New Mexico Supreme Court issued two important decisions which affirmed the obligations of insurance companies doing business in New Mexico with respect to mandatory insurance coverage for New Mexico citizens.  Those decisions, *Progressive Northwestern Insurance Company v. Weed Warrior Services*, 2010-NMSC-050, 149

N.M. 157, 245 P.3d 1209, (2010) ("*Weed Warrior*") and *Jordan v. Allstate Insurance Company,* 2010-NMSC-051, 49 N.M. 162, 245 P.3d 1214 (2010)("*Jordan*"), affirmed that insurance companies are obligated to provide UM/UIM limits at the same level of coverage as liability limits, absent a legally valid rejection of UM/UIM coverage.  The decisions specifically struck down rejection forms substantially identical to those utilized by the Defendants. From the date of those decisions, Defendants could have no reasonable doubt that their rejection forms were invalid, that their policies issued without UM/UIM coverage were in direct violation of New Mexico law, and that their insureds were entitled to reformed policies and written notice explaining the coverage and their right to make a claim on that coverage.

20.     Plaintiffs never executed a valid rejection of UM/UIM coverage under the Policy. Although Defendants knew or should have known in October 2010 that as a matter of law the Plaintiffs and other policyholders and those claiming through those policyholders (Class 1 and 2 insureds) were entitled to reformation of the policies to provide UM/UIM claim coverage as Class 1 and Class 2 insureds in regards to their issued automobile policies, Defendant Sentry has failed to ever properly reform the illegal policies. In 2011, Defendants sent to every policyholder with a policy then in force that had rejected UM/UIM coverage, including Plaintiff Maxine Soseeah, a form letter and follow-up form letter advising them that they had to sign a new waiver or "Your Premium Will Go Up."   (*See* "IMPORTANT NOTICE" and "FINAL NOTICE," attached hereto as Exhibits A and B.)  These letters were misleading and inaccurate.  In January 2012, Defendants sent another form letter to certain policyholders, including Plaintiff Maxine Soseeah, advising them that they may have UM/UIM coverage.  (*See* "IMPORTANT NOTICE OF POTENTIAL COVERAGE," attached hereto as Exhibit C.)  This letter was also misleading

and inaccurate.  Defendants' obligation of good faith and fair dealing to its insureds required it to reform coverage and provide a clear simple notice of reformed coverage and a right to make a claim in a timely fashion after the Supreme Court's decision.

21.     In 2012, Plaintiff Delbert Soseeah through counsel made a claim for UM/UIM benefits under any and all available Sentry policies, and pursuant to a letter sent August 28, 2012, demanded that Defendant Sentry reform all available policies to provide stacked UM/UIM motorist coverage limits equal to the limits of the liability coverage on each of the vehicles covered by the Policy in accordance with the decisions in *Jordan* and *Weed Warrior.*

22.     In his August 28, 2012 letter, Plaintiff Delbert Soseeah specifically requested that if Defendant Sentry was denying coverage under any applicable policies, it include a reasonable explanation of the basis it relied on for the denial, as required by NMSA 1978, Section 59A-16-20(N).

23.     Defendant Sentry responded by providing documentation demonstrating post-*Jordan* and *Weed Warrior* uninsured/underinsured motorist coverage in the amount of $25,000/$50,000 per vehicle.

24.     On September 6, 2012, Plaintiff Soseeah sent Sentry a time-limited demand for "the full amount of coverage available under all Sentry policies that apply to this claim" giving Sentry until September 17, 2012 at 4:00 p.m. MST to agree to pay the claim in full.

25.     Defendant Sentry failed to reform the contract and rejected Plaintiff Delbert Soseeah's demand by failing to agree to pay the claim within the deadline communicated by Plaintiff.  Despite its statutory obligation, Sentry also failed to include a reasonable basis for the denial of coverage.

26.     Despite the absence of a written rejection of UM/UIM coverage that complied with New Mexico law, including NMSA 1978, § 66-5-301, 13.12.3.9 NMAC, and applicable appellate decisions, and despite Defendant Sentry's statutory obligation to provide UM/UIM coverage with limits equal to the liability limits absent a valid waiver, it refused to reform/equalize the applicable policies or otherwise to provide UM/UIM coverage to Plaintiff Delbert Soseeah in connection with the Collision.

27.     By facsimile dated September 12, 2012 Defendant Sentry wrongfully claimed a valid rejection of "um (sic) coverage" (uninsured/underinsured motorist).  Defendant Sentry acted in bad faith in asserting a "valid rejection" of "um coverage":

(a) Defendant Sentry never notified the Soseeahs that their initial signed purported waiver of UM/UIM coverage was invalid and the Soseeahs in fact under New Mexico law had UM/UIM coverage from the policies' inception through and including the date of their demand in August 2012;

(b) Defendant Sentry had actual knowledge of Plaintiff Delbert Soseeah's accident and potential claim and never notified him of the availability of additional coverage as required by law;

(c) Defendant Sentry exploited its position of knowledge of Delbert Soseeah's claim and its position of trust by sending the Plaintiffs an "after the fact" "IMPORTANT NOTICE" (Exhibit A) which suggests or implies waiver of UM/UIM coverage for the time period of the accident, essentially attempting to have the Plaintiffs waive their right to make a claim for $50,000, without mentioning or disclosing the availability of coverage, that Plaintiffs were

entitled to coverage, and that signing the requested waiver could significantly affect their rights to recovery;

(d) In utter disregard of New Mexico law, the "IMPORTANT NOTICE" and requested "waiver" were not sufficient as to form or character, were offered without proper explanation or disclosure, and were presented for the purpose of defrauding the Plaintiffs.

28.     Because Defendant Sentry has failed to obtain a rejection of UM/UIM coverage in a manner consistent with the requirements imposed by New Mexico law, UM/UIM coverage with limits equal to the limits of liability coverage must be read into Plaintiffs' policies and all applicable policies issued by Defendant Sentry, to conform those policies to New Mexico law. The failure to process and pay the Plaintiffs' claim amounts to bad faith.

29.     Defendant Sentry did not incorporate a written rejection of UM/UIM coverage into any applicable policies issued to Plaintiffs and its other similarly situated New Mexico policyholders in a way that affords the insured a fair opportunity to reconsider the decision to reject.

30.     Because Defendant Sentry knew or should have known that the applicable policies issued to Plaintiffs and other similarly situated New Mexico policyholders did not conform to New Mexico law, Defendant Sentry had an affirmative obligation to notify Plaintiffs and similarly situated New Mexico policyholders that the policies were non-conforming and needed to be reformed so that the level of UM/UIM coverage was equal to the level of the liability limits under the applicable policies.  Defendant Sentry never notified Plaintiffs that their UM/UIM coverage needed to be equalized so that the UM/UIM limits conformed to the liability limits, even after the New Mexico Supreme Court made clear in *Jordan* and *Weed Warrior* that

Defendant Sentry's policies did not comply with New Mexico law, and despite the fact that other insurance companies doing business in New Mexico took it upon themselves to provide such notice.

31.     Upon information and belief, based on the Policy, there are at least two vehicles under which coverage may be provided to Plaintiffs in connection with the Collision.  Because Plaintiff Delbert Soseeah was a relative residing in Plaintiff Maxine Soseeah's household at the time of the Collision, Defendant Sentry was obligated to stack all available reformed coverages, meaning that $50,000 was available in UM/UIM coverage to satisfy Plaintiff's UM/UIM claim. Even after Defendants finally reformed the policy issued by Peak, it failed to disclose the existence of or reform the policy on the 2003 Ford Explorer and instead asserted an offset of $25,000 on $25,000 of UM/UIM coverage that it knew or should have known was actually $50,000, wrongfully denying the claim a second time.

32.     As a direct and proximate result of Defendant Sentry's failures to comply with New Mexico law, as set forth above, Plaintiffs have been damaged and are likely to continue to be damaged, and they are entitled to damages and declaratory and injunctive relief as set forth below.

<u>**Allegations Related to Plaintiff Borrego**</u>

33.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

34.     On or about April 12, 2006, Plaintiff John Borrego was seriously injured in a vehicular collision in Santa Fe County, New Mexico.

35.     At the time of the collision, Plaintiff was a passenger in a vehicle being driven by Michael Maldonado.

36.     While traveling eastbound on Airport Road in the right lane, Maldonado stopped at a red light at the intersection of Airport Road and South Meadows Road.

37.     While Maldonado and Borrego were stopped at the red light, a vehicle being driven by Daniel Gonzales approached the intersection in the eastbound left lane.  Gonzales was not paying attention to his driving and veered into the right lane, crashing into the back of the car being driven by Maldonado.

38.     Plaintiff Borrego sustained serious injury in the collision.

39.     Plaintiff Borrego collected $25,000 in bodily injury liability coverage from GEICO Casualty Company.  This amount was not sufficient to compensate Plaintiff Borrego's loss.

40.     Prior to the collision, Plaintiff Borrego entered into an insurance contract with Defendant Dairyland Insurance Company to provide insurance coverage on two separate vehicles he owned, a 1996 Mercury Sable and a 1968 Ford F-150.  The Dairyland insurance policy number is 294205835.

41.     Plaintiff Borrego paid the premiums for coverage on both vehicles covered by the policy and Dairyland agreed to provide coverage.

42.     At all times material hereto, each vehicle had bodily injury coverage under the policy in the amounts of $25,000 per person, $50,000 per occurrence.

43.     After the *Jordan* and *Weed Warrior* decisions were issued, Defendant Sentry had an affirmative obligation to notify Plaintiff Borrego and all other similarly situated New Mexico

policyholders that their policies were reformed and that they had UM/UIM coverage in an amount equal to the level of the bodily injury liability limits under their policies.

44.     Defendant Sentry never notified Plaintiff Borrego that his policy was reformed, that he had UM/UIM coverage in an amount equal to the bodily injury liability limits of his policy after apportioned offsets, or that he had a right to make a claim for accidents that occurred during the period of reformed coverage.

45.     $50,000 is available under Plaintiff Borrego's Dairyland policy in UM/UIM coverage to satisfy Plaintiff Borrego's UM/UIM claim.

46.     By letter of November 20, 2012, after the class action complaint in this matter had been filed, Plaintiff Borrego requested that Sentry provide stacked UM/UIM coverage equal to the bodily injury liability coverage on each vehicle.

47.     Sentry subsequently agreed to provide stacked UM/UIM coverage to Plaintiff Borrego.

48.     As a direct and proximate result of Dairyland's and Sentry's wrongful actions as set forth herein, Plaintiff Borrego has suffered damages and is likely to continue to suffer damages, and he is entitled to damages and to declaratory and injunctive relief as set forth below.

## Class Action Allegations

49.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

50.     Upon information and belief, all insurance policies issued by Defendant Sentry to New Mexico policyholders are uniform in all respects material to claims brought herein and differ only in the limits identified in the endorsements included with such policies.  Additionally,

all forms used by Defendant Sentry for putative rejection of UM/UIM insurance coverage are uniform in all respects material to claims brought herein.  According to Defendant Sentry's internal documents, UM/UIM rejection forms complying with *Jordan* and *Weed Warrior* were not begun to be utilized until April 1, 2011.  Prior to that time, no purported rejections of UM/UIM coverage complied with the requirements of New Mexico law as set forth in *Jordan* and *Weed Warrior* that were required at least as early as January 1, 1995.

51.     Defendant Sentry's acts, omissions and policies, including its failure to notify insureds that Defendant Sentry's UM/UIM waivers were found invalid by the New Mexico Supreme Court, and its failure to notify insureds to submit a claim if they had been involved in an accident which entitled them to claim UM/UIM benefits, constitute unfair and deceptive trade practices, unfair insurance practices, omissions of material fact, wrongful denials of UM/UIM coverage, and breach of the implied covenant of good faith and fair dealing against Plaintiffs and all other similarly situated Sentry policy holders in New Mexico.

52.     This action is properly certifiable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2).   The Class definition is as follows: All insureds under policies issued in New Mexico by Sentry and its related entities including Peak, Viking and Dairyland from January 1, 1995 to April 1, 2011 in which UM/UIM coverage was purportedly rejected.  Because no such rejections were in conformance with New Mexico law as set forth in *Jordan* and *Weed Warrior*, all such insureds are entitled to reformation and proper and adequate notice.  Included as subclasses are: (1) insureds who received the "IMPORTANT NOTICE" and "FINAL NOTICE" attached as Exhibits A and B; and (2) insureds who received the "IMPORTANT NOTICE OF POTENTIAL COVERAGE" attached as Exhibit C.

53.     The Plaintiffs' claims are representative of the Class and of every subgroup of the primary Class. The Class is numerous. Defendants concede in discovery that at least 36,000 potential claimants who signed invalid rejections were entitled to reformation. There are common issues of law and fact to all of the claims of the Class members. A Class action represents the easiest and most economical way to declare and notify class members of their rights as set forth herein and their potential claims. A Class action also ensures that all potential claimants are notified and can redress their wrongs and make a claim for UM/UIM coverage.

54.     Excluded from the Class are officers, directors, and employees of Defendant Sentry, their spouses, children, heirs, and assigns.

55.     The proposed Class definition is precise, objective and presently ascertainable and it is administratively feasible for the Court to easily ascertain whether a particular individual is a member.

56.     Certification of the Class is desirable and proper because there are questions of law and fact in this case which are common to all members of the Class.  Such common questions of law and fact include, but are not limited to:

       a.     Whether Defendant Sentry's acts and practices constitute a breach of its contractual obligations with respect to its New Mexico policyholders;

       b.     Whether Defendant Sentry's acts and practices have breached the implied covenant of good faith and fair dealing with respect to the policies issued to New Mexicans;

       c.     Whether Defendant Sentry's acts and practices violate Article 16 of the New Mexico Insurance Code;

d.      Whether Defendant Sentry's acts and practices constitute unfair or deceptive trade practices or unconscionable trade practices;

e.      The content, interpretation, and legal effect of Defendant Sentry's standard policy forms and other standard form documents (including the form letters attached hereto as Exhibits A, B and C), insofar as they relate to the acts and practices set forth above;

f.      The remedies available to Plaintiffs and Defendant Sentry's other New Mexico policy holders, should it be determined that Defendant Sentry's acts and practices have violated its duties to its New Mexico policyholders; and

g.      The legal and/or factual applicability of affirmative defenses that may be alleged by the Defendant Sentry.

57.     Certification of the Class is desirable and proper because Plaintiffs' claims are typical of the claims of the members of the Class that Plaintiffs seek to represent.   Without limitation, Plaintiffs claim that Defendant Sentry's acts and practices are in breach of the common law and statutory duties alleged herein and are typical of the claims of the members of the class.

58.     Certification of the Class is desirable and proper because Plaintiffs will fairly and adequately protect the interests of the Class they seek to represent.   There are no conflicts of interest between Plaintiffs and those of other members of the Class, and Plaintiffs are cognizant of their duties and responsibilities to the Class.   Plaintiffs' attorneys are qualified, experienced, and able to conduct the proposed class action litigation.

59.     The members of the Class are so numerous that joinder of all members of the Class as individual parties is impracticable.

60.     This action should proceed as a class action under Rule 23(b)(2) because Defendant Sentry has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to the Class.   Plaintiffs seek to establish the rights and obligations of the parties with respect to the claims at issue in this case and to enjoin Defendant Sentry from continuing to engage in those practices that violate the duties and contractual and legal obligations owed to Plaintiffs and the Class under New Mexico statutory and common law.

<u>**Count I**</u>
**(Violation of the Unfair Practices Act)**

61.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in all preceding paragraphs, as though fully set forth herein.

62.     There was in effect at all times material a state statute commonly known as the New Mexico Unfair Practices Act ("UPA"), NMSA 1978, Section 57-12-1 et seq., including but not limited to those subsections in Section 57-12-2(D)(7), (D)(15), (D)(17) and Section 57-12-2(E), which prohibit a person selling insurance from engaging in unfair or deceptive trade practices, as follows:

D.     "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:

(7)     representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;

***

(15)    stating that a transaction involves rights, remedies or obligations that it does not involve;

***

(17) failure to deliver the quality or quantity of goods or services contracted for;

and

E.      "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment:

(1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

(2) results in a gross disparity between the value received by a person and the price paid.

63.     Defendant Sentry's actions and inactions outlined herein constituted unfair or deceptive trade practices and/or unconscionable trade practices within the meaning of the definitions referenced in paragraph 62, above. The unfair or deceptive trade practices include, but are not limited to, all of the following:

(i) using rejection forms for UM/UIM coverage that failed to inform consumers of their choices adequately or allowed them to reconsider the choice once made;

(ii) failing to promptly notify New Mexico policyholders from 1995 to April 1, 2011 who had purportedly rejected UM/UIM coverage equal to the their liability limits of the reformation of their auto insurance policies after the *Jordan* and *Weed Warrior* decisions;

(iii) failing to provide a prompt, clear and easily understood explanation of what additional coverage is available to Defendants' insureds after *Jordan* and *Weed Warrior* and how to make a claim.

The unconscionable practices include, but are not limited to, all of the following:

(i)     Sending the "IMPORTANT NOTICE" and "FINAL NOTICE" (attached as Exhibits A and B) to all policyholders with policies in force who had purportedly rejected UM/UIM coverage telling them they needed to sign new rejection forms or their premiums would go up without disclosing that they were entitled to UM/UIM coverage for the remainder of their policy term without charge and that their premium could not go up until their renewal date, that each insured had had UM/UIM coverage for the life of their policy, and that they could make a UM/UIM claim on that policy if they had such a claim even though they had signed a prior rejection;

(ii)    Delaying sending the "IMPORTANT NOTICE OF POTENTIAL COVERAGE" (attached as Exhibit C) which purported to notify a limited class of individuals of reformation of their policies and the right to make a claim until January 6, 2012, fifteen months after learning of their obligation to send notice at all;

(iii)     Drafting the "IMPORTANT NOTICE OF POTENTIAL COVERAGE" (Exhibit C) in such a  dense, technical, and overly verbose manner that it was incomprehensible to unsophisticated consumers;

(iv)     Sending the "IMPORTANT NOTICE OF POTENTIAL COVERAGE" (Exhibit C)   to   a select group of only 36,000 policyholders when Defendants knew or should have known that limiting notice to that select group would eliminate substantial numbers of claims and the simple and common sense solution was simply do an immediate mailing to all current and former policyholders whose purported rejection was invalid with a new declarations page reforming the policy and a letter describing the insured's right to make a claim.

64.     As a direct and proximate result of Defendant Sentry's actions described herein, Plaintiffs and the Class have been damaged and are likely to be damaged by the lack of notice of the reformation of their policies to include UM/UIM coverage, the misleading nature of the "IMPORTANT NOTICE" AND "FINAL NOTICE" (Exhibits A and B) as to those members of the Class who were sent those notices, and the misleading nature of the "IMPORTANT NOTICE OF POTENTIAL COVERAGE" (Exhibit C) as to those members of the Class who were sent that notice.

65.     Defendant Sentry, acting through its agents, adjusters, and employees, as set forth above, knowingly and willfully engaged in unfair trade practices prohibited under NMSA 1978, Section 57-12-3, including but not limited to those subsections in Section 57-12-2(D)(7), (D)(15),  (D)(17) and Section 57-12-2(E), thereby entitling Plaintiffs and the Class to an

injunction and declaratory relief declaring and notifying them of these violations of the UPA and their rights with respect thereto.  NMSA 1978, § 57-12-10(A).  Plaintiffs and the Class are also entitled to recover their attorney's fees and costs of this action.  *Id.* § 57-12-10(C).  Plaintiffs individually are entitled to recover their damages.

### Count II
### (Violation of the Trade Practices and Frauds Act and the Insurance Code)

66.  Plaintiffs reallege and incorporate herein by reference each and every allegation contained in all preceding paragraphs, as though set forth fully herein.

67.  There was in effect at all times material a state statute commonly known in the Insurance Code as the Trade Practices and Frauds Act ("TPFA"), NMSA 1978, Sections 59A-16-1 through -30 (1984, as amended), including but not limited to NMSA 1978, Section 59A-16-20 (1997), subsections (A), (B), (C), (E), (G) and (N), which prohibit the following unfair claims practices:

A. misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;

B. failing to acknowledge and act reasonably promptly upon communication with respect to claims from insureds arising under policies;

C. failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies;

***

E. not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;

***

G. compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such have made claims for amounts reasonably similar to amounts ultimately recovered;

***

N. failing to promptly provide an insured with a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

68.     The actions of Defendant Sentry, as set forth above, constitute unfair insurance claims practices, knowingly committed or performed with such frequency as to indicate a general business practice prohibited by NMSA 1978, Section 59A-16-20, including but not limited to subsections (A), (B), (C), (E), (G) and (N).

69.     Defendant Sentry, as set forth above, knowingly and willfully, or with such frequency as to indicate its general business practice in this State, engaged in unfair insurance claims practices prohibited by NMSA 1978, Section 59A-5-26(C)(2)(a) and (b), where Defendant Sentry:

(a) has without just cause failed to pay, or delayed payment of, claims arising under its policies, whether the claim is in favor of an insured or in favor of a third person with respect to the liability of an insured to such third person; or

(b) without just cause compels insureds or claimants to accept less than an amount due them or to employ attorney or to bring suit against the insurer or such an insured to secure full payment or settlement of a claim.

70.     NMSA 1978, Section 59A-16-4 prohibits Defendant Sentry from making any statement which misrepresents the benefits or terms of any policy, and prohibits Defendant Sentry from failing to disclose material facts reasonably necessary to prevent other statements made from being misleading.  By its acts and omissions as set forth herein, Defendant Sentry violated these provisions of the TPFA.

71.     NMSA 1978, Section 59A-16-5 prohibits Defendant Sentry from making any assertion, representation or statement which is untrue, deceptive or misleading.  By its acts and omissions as set forth herein, Defendant Sentry violated these provisions of the TPFA.

72.     As a direct and proximate result of Defendant Sentry's practices as described herein, Plaintiffs and the Class are entitled to injunctive and declaratory relief declaring and notifying them of Defendants' violations of the TPFA and their rights with respect thereto. Plaintiffs individually are entitled to damages.

### Count III
### (Claim for Uninsured Motorist Benefits)

73.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in all preceding paragraphs, as though set forth fully herein.

74.     By undertaking the acts and omissions described above, Defendant Sentry has wrongfully and unlawfully denied UM/UIM coverage to Plaintiffs and the Class.

75.     Pursuant to New Mexico law, and because of Defendant Sentry's actions as described above, Plaintiffs and the Class are entitled to injunctive and declaratory relief declaring and notifying them that they have UM/UIM coverage with limits in an amount equal to the limits of the liability coverage of the policies at issue and their rights with respect thereto.  Plaintiffs individually are entitled to damages.

## Count IV
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

76.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in all preceding paragraphs, as though set forth fully herein.

77.     Defendant Sentry has a duty to act in good faith and to treat its policyholders in a fair manner, to act honestly, both in fact and in law in these dealings and to give as much consideration to the interests of its policyholders as it does to its own interests.

78.     In undertaking the wrongful acts described herein, Defendant Sentry has breached its duty of good faith and fair dealing entitling Plaintiffs and the class to declaratory and injunctive relief declaring and notifying them of Defendant Sentry's breach of the its duty of good faith and fair dealing and their rights with respect thereto.  Plaintiffs individually are entitled to damages.

## Count V
### (Breach of Contract)

79.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in all preceding paragraphs, as though set forth fully herein.

**80.**     By issuing policies to Plaintiffs and the Class, Defendant Sentry entered into a contract with Plaintiffs and entered into the same contractual obligations with each member of the Class that Plaintiffs seek to represent.

81.     By engaging in the conduct alleged herein, Defendant Sentry breached its contractual obligations to Plaintiffs and the Class, entitling Plaintiffs and the Class to declaratory and injunctive relief declaring and notifying them of these contractual breaches and their rights with respect thereto.  Plaintiffs individually are entitled to damages.

## Count IV
### (Injunctive Relief)

82.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in all preceding paragraphs, as though set forth fully herein.

83.     Plaintiffs and the Class are entitled to injunctive relief requiring that Defendant Sentry be enjoined from continuing deceptive and misleading practices that violate the statutory duties described above as well as the contractual and legal obligations owed to the Plaintiffs and the Class.

84.     Defendant Sentry must be compelled to stop its practice of failing to provide UM/UIM coverage with limits equal to the limits of liability coverage, where it has failed to obtain a valid waiver/rejection of the same.

85.     Defendant Sentry must also be compelled to give notice to all class members that the *Jordan* and *Weed Warrior* decisions mandate that they are entitled to UM/UIM coverage equal to liability coverage, and of their right to make a claim.

## Count V
### (Declaratory Judgment)

86.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in all preceding paragraphs, as though set forth fully herein.

87.     An actual controversy exists between the parties thereby rendering declaratory relief proper pursuant to NMRA 2012, Rule 1-057 and/or Fed.R.Civ.P. 57, and the New Mexico Declaratory Judgment Act, NMSA 1978, Sections 44-6-1 et seq. and/or the federal Declaratory Judgment Act, 28 U.S.C. Section 2201 *et seq*.

88.    Plaintiffs and the Class are entitled to a declaratory judgment declaring that Defendants, by having sent no notice to their insureds, or in some instances, misleading and incomplete notices, have violated the UPA and TPFA, breached their contracts with Plaintiffs and the Class, have failed to provide UM/UIM coverage, and have violated the implied covenant of good faith and fair dealing.  Plaintiffs and the Class also request that the Court declare and establish the respective rights and obligations of the parties with respect to the claims set forth herein.

## Count VIII
### (Willful Misconduct)

89.    Plaintiffs reallege and incorporate herein by reference each and every allegation contained in all preceding paragraphs, as though set forth fully herein.

90.    Defendant Sentry's conduct in failing to equalize coverage was willful, wanton, malicious, in bad faith and in reckless disregard of the rights of Plaintiffs and the Class.

91.    Defendant Sentry's conduct in failing to provide, or denying UM/UIM coverage with limits equal to the limits of liability coverage where the absence of a legally sufficient waiver/rejection had become reasonably clear was willful, wanton, malicious, in bad faith and in reckless disregard of the rights of Plaintiffs and the Class.

92.    Plaintiffs and the Class are entitled to declaratory and injunctive relief declaring and notifying them of Defendant Sentry's misconduct.  Plaintiffs individually are entitled to punitive damages.

## Prayer for Relief

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for declaratory and injunctive relief against Defendants as follows:

A.      Certifying this action as a class action pursuant to Rule 23(b)(2);

B.      Awarding compensatory damages to Plaintiffs individually for the damages done to them in an amount to be proven at trial;

C.      Awarding punitive damages to Plaintiffs individually in an amount sufficient to punish Defendant Sentry for its reckless, willful, and wanton conduct, and to deter it, and others similarly situated, from such conduct in the future in an amount to be proven at trial;

D.      Granting a declaratory judgment that will establish the rights and obligations of the parties with respect to the claims set forth herein;

E.      Granting injunctive relief to enjoin Defendant Sentry from continuing to engage in those practices that violate its duties and contractual and legal obligations owed to the Plaintiffs and the Class as described herein;

F.      Granting injunctive relief to compel Defendant Sentry to give notice to all class members of the effect of the *Jordan* and *Weed Warrior* decisions on their UM/UIM coverage;

G.      Awarding the Plaintiffs' and the Class' costs and expenses including
          attorneys' fees;

H.      Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,


*/s/ John C. Bienvenu*
John C. Bienvenu
Kristina Martinez
ROTHSTEIN, DONATELLI, HUGHES,
DAHLSTROM, SCHOENBURG &
BIENVENU, LLP
1215 Paseo de Peralta
P.O. Box 8180
Santa Fe, New Mexico 87504-8180

26

(505) 988-8004
Fax: (505) 982-0307

Linda G. Hemphill
THE HEMPHILL FIRM, P.C.
P.O. Box 33136
Santa Fe, New Mexico 87594
(505) 896-8515
Fax: (505) 896-1132

JOHN HOWARD, ATTORNEY AT LAW
223 North Guadalupe Street no. 533
Santa Fe, New Mexico 87501
(505) 780-5264

Attorneys for Plaintiffs

<u>CERTIFICATE OF SERVICE</u>

I certify that on April 30, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jennifer A. Noya        jnoya@modrall.com, ericp@modrall.com, leanng@modrall.com, victoriaa@modrall.com

Alex Cameron Walker        awalker@modrall.com, ericp@modrall.com, leanng@modrall.com, victorial@modrall.com

*/s/ John C. Bienvenu*
John C. Bienvenu