# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DELBERT SOSEEAH, for himself
and others similarly situated,
MAXINE SOSEEAH, for herself and
others similarly situated, and
JOHN BORREGO, for himself
and others similarly situated,

       Plaintiffs,

v.                                No. CIV 12-01091 RB/GBW

SENTRY INSURANCE, A MUTUAL COMPANY,
AND ANY OTHER RELATED BUSINESS
ENTITIES INCLUDING PARENT
COMPANIES, CONSOLIDATED
TAX FILERS AND SUBSIDIARIES
INCLUDING DAIRYLAND INSURANCE
COMPANY, PEAK PROPERTY AND
CASUALTY INSURANCE COMPANY, and
VIKING INSURANCE COMPANY OF WISCONSIN,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

This action arises out of a dispute over automobile insurance policies sold by Defendant Sentry Insurance and its related entities in the State of New Mexico. Plaintiffs allege the Defendants' policies failed to comport with the legal requirements imposed by the State of New Mexico for uninsured/underinsured motorist ("UM/UIM") insurance coverage.

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Class Claims, As Well As the Named Plaintiffs' Individual Claims for Injunctive Relief. (Doc. 113). Jurisdiction arises under 28 U.S.C. § 1332(d). Having reviewed the submissions of the parties and the relevant law, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART.**

## BACKGROUND[1]

This putative class action lawsuit involves questions relating to the Defendants' provision of uninsured and underinsured motorist insurance coverage. Defendant Sentry Insurance, a Mutual Company ("Sentry"), is the parent company of a number of subsidiaries, including Defendant Dairyland Insurance Company ("Dairyland"), Defendant Viking Insurance Company of Wisconsin, and Defendant Peak Property & Casualty Insurance Corporation ("Viking/Peak"). Each of the named Plaintiffs in the Complaint held insurance with either Dairyland or Viking/Peak.[2] The Soseeah Plaintiffs and Plaintiff Borrego were involved in accidents with underinsured drivers.

Plaintiffs claim the Defendants violated the law by: (1) issuing policies that failed to provide UM/UIM coverage required by law; (2) using UM/UIM rejection forms that were deceptive, inadequate and legally insufficient for the purpose of reducing Sentry's UM/UIM insurance exposure; (3) failing to properly reform those illegally issued policies when the purported rejections of UM/UIM coverage which Defendants utilized were declared *legally* insufficient by the New Mexico Supreme Court in October 2010; (4) failing to notify their insureds of UM/UIM coverage in any form whatsoever until more than fifteen months after the New Mexico Supreme Court mandated coverage; (5) making the notification as obscure and complex as possible in an effort to limit claims and minimize Defendants' financial exposure; and (6) requiring policyholders to sign UM/UIM putative rejections within a few months of October 2010 and then using those rejections to deny UM/UIM coverage for accidents that occurred prior to the waivers being signed. (Doc. 131 at ¶ 1).

---

[1] The following background narrative is based on Plaintiffs' allegations, which, at this stage of the litigation process, have not been substantiated. However, for purposes of analyzing Defendants' motions to dismiss, pursuant to Rule 12(b)(6), this Court must accept all of the Plaintiffs' well-pleaded allegations as true. *David v. Cty. & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).

[2] All references to the Complaint refer to the Fourth Amended Complaint. (Doc. 131)

Based on these alleged wrongdoings, Plaintiffs bring claims for: (1) violation of New Mexico's Unfair Practices Act; (2) violation of New Mexico's Trade Practices and Frauds Act and the Insurance Code (also known as the Unfair Insurance Practices Act or UIPA); (3) uninsured motorist benefits; (4) breach of the implied covenant of good faith and fair dealing; (5) breach of contract; (6) injunctive relief; (7) declaratory judgment; and (8) willful misconduct. Plaintiffs seek certification of this action as a class action under Rule 23(b)(2), damages, injunctive relief, declaratory judgment, and costs and attorney's fees.

## LEGAL STANDARD

Defendants bring this motion under Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure. These rules overlap. Rule 12(b)(6) provides the governing standard. *See Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a complaint in whole or in part for failing to state a claim upon which relief is available. To survive a Rule 12(b)(6) motion to dismiss, a complaint must state a claim for relief that plausibly, not merely possibly, entitles the plaintiff to relief under the relevant law. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). In considering a motion to dismiss, the court must look within the four corners of the complaint and accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not accept legal conclusions contained in the complaint as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

Defendants pursue two tracks in favor of dismissal. First, Defendants contend that the New Mexico Court of Appeals' decision in *Curry v. Great Northwest Ins. Co.*, destroys the

foundation of Plaintiffs' class claims. *See* 320 P.3d 482, (N.M. Ct. App. Nov. 20, 2013) *cert.*
*denied* No. 34,451 (Mar. 7, 2014). Second, Defendants argue that Plaintiffs' class claims for
injunctive and declaratory relief fail as a matter of law. The Court will address each of these
arguments in turn.

## I.   *Curry* Does Not Foreclose Plaintiffs' Claims

New Mexico law places significant obligations on insurers to provide UM/UIM coverage.
These obligations, codified in NMSA 1978 § 66-5-301(A)-(C), have been examined in depth by
New Mexico courts. *See Valdez v. Metro. Prop. & Cas. Ins. Co.*, CIV 11-0507 JB/KBM, 2012
WL 1132414 (D.N.M. Mar. 31, 2012) (providing an overview of the New Mexico Supreme
Court's cases on UM/UIM coverage). In particular, New Mexico courts have focused on the
requirements for insurers to obtain a valid rejection of UM/UIM coverage.

The seminal pair of cases on this issue – decided on the same day – are *Progressive*
*Northwestern Ins. Co. v. Weed Warrior Servs.*, 245 P.3d 1209 (2010), and *Jordan v. Allstate Ins.*
*Co.*, 245 P.3d 1214 (2010). In these cases, the New Mexico Supreme Court emphasized that
insurers must include UM/UIM coverage in an amount equal to the policy's liability limits in all
policies unless it is explicitly rejected. The court noted that in interpreting § 66-5-301, New
Mexico courts have "long applied a qualitatively different analysis than [they] use when
construing many other types of statutes and insurance policies." *Jordan,* 245 P.3d at 1219. The
statute "must be construed liberally" because it is remedial in nature. *Weed Warrior*, 245 P.3d at
1213. Accordingly, in both cases, the New Mexico Supreme Court interpreted § 66-5-301
expansively, clarifying that "[t]he provision of the maximum possible amount of UM/UIM
coverage in every insurance policy is the default rule, and any exception to that rule must be
construed strictly to protect the insured." *Jordan*, 245 P.3d at 1219 (quotation omitted). The

4

court held "that the choice of the insured to purchase any lower amount [of UM/UIM coverage] functions as a rejection of that maximum amount of coverage statutorily possible," *Weed Warrior*, 245 P.3d at 1214, and such choices must comply with the stringent requirements for a valid rejection. *See Federated Serv. Ins. Co. v. Martinez*, 529 F. App'x 954, 957 (10th Cir. 2013)

The New Mexico Supreme Court went so far as to "prescribe workable requirements for a valid and meaningful [*i.e.*, knowing and intelligent] rejection of UM/UIM coverage in amounts authorized by statute." *Jordan*, 245 P.3d at 1220-21. The court stated:

> When issuing an insurance policy, an insurer must inform the insured that he or she is entitled to purchase UM/UIM coverage in an amount equal to the policy's liability limits and must also provide the corresponding premium charge for that maximum amount of UM/UIM coverage. The premium cost for the minimum amount of UM/UIM coverage allowed by Section 66-5-301(A) must also be provided, as well as the relative costs for any other levels of UM/UIM coverage offered to the insured. The insured must be informed that he or she has a right to reject UM/UIM coverage altogether. Providing the insured with a menu of coverage options and corresponding premium costs will enable the insured to make an informed decision about the level of UM/UIM coverage he or she wants to purchase and can afford and will minimize uncertainty and litigation with regard to the coverage that the insured has obtained.

*Jordan*, 245 P.3d at 1221.

Recently, the New Mexico Court of Appeals expounded on insurers' obligations to obtain a knowing and intelligent rejection of UM/UIM coverage. *Curry*, 320 P.3d at 483. In *Curry*, the court considered the limited question of "whether [the New Mexico Supreme Court's] decision in [*Jordan*] requires that uninsured and underinsured motorist coverage options and corresponding premiums appear on the written UM/UIM coverage rejection form itself." *Id.* The *Curry* Court found that *Jordan* focused on the need to provide insureds with enough information to make an informed decision regarding UM/UIM coverage in contemplation of purchasing their insurance policy. *Id.* at 487. And, in this pursuit, according to the *Curry* Court, the *Jordan* Court left some flexibility to insurers in how they were to go about accomplishing this goal. *Id.* at 487.

5

Hence, the *Curry* Court held that there was no requirement that UM/UIM coverage options and corresponding premium charges be provided within the four corners of the written rejection form. *Id.*

Defendants argue that Plaintiffs' claims are premised on the requirement that the UM/UIM coverage options and premium disclosures appear on the written rejection form itself. Consequently, Defendants contend, because the *Curry* holding rejects this reasoning, Plaintiffs' claims fail as a matter of law and should be dismissed.

In response, Plaintiffs do not quarrel with the holding of *Curry*. Rather, they argue that *Curry* should not be read as expansively as the Defendants suggest. The Court agrees. In *Curry*, the Plaintiffs challenged only the UM/UIM rejection form, arguing that the form itself was invalid because it did not contain a list of premium charges corresponding to the available UM/UIM coverage options. *Id.* at 484. As stated above, the court decided this question against the plaintiffs. Yet, the court took significant effort to keep its holding narrow. Therefore, under *Curry*, dismissal is only mandated where the claims in plaintiffs' complaint are limited to the rejection form. *Id.*

Here, contrary to Defendants' assertions, Plaintiffs' claims are not contingent on what information was presented in Defendants' UM/UIM rejection forms. While Plaintiffs challenge the validity of Defendants' UM/UIM rejection forms, their allegations concern more than the inclusion – or, rather, lack thereof – of information regarding UM/UIM coverage options and corresponding premium charges. Plaintiffs allege that "Defendant Sentry did not incorporate a written rejection of UM/UIM coverage into any applicable policies issued to Plaintiffs . . . in a way that affords the insured a fair opportunity to reconsider the decision to reject." (*Id.* at ¶ 29).

What's more, Plaintiffs challenge the validity of the entire process Defendants used to obtain UM/UIM rejections prior to April 11, 2011. (*See* 131 at ¶ 52).

Plaintiffs' claims are also based on Defendants' post-*Jordan* conduct, stemming from Defendants' failure to notify the insureds of their alleged wrongdoing. Specifically, Plaintiffs contend that Defendants had an affirmative obligation to notify Plaintiffs that their policies were non-conforming and required reformation. (*See id.* at ¶ 30). Yet, according to Plaintiffs, Defendants performed this task in a misleading and inappropriate fashion. (*See id.* at ¶ 51). This conduct is clearly not related to the validity of the rejection forms.

Therefore, *Curry* is inapposite. It is obvious that Plaintiffs' claims extend well beyond whether a list of premium charges corresponding to the available UM/UIM coverage were included in the rejection form itself. Since Plaintiffs have pled plausible claims that entitle them to relief under New Mexico law, dismissal of their claims would be inappropriate.

## II.    Injunctive Relief

Among the remedies requested in Plaintiffs' Fourth Amended Complaint, Plaintiffs seek injunctive relief "to enjoin Defendant Sentry from continuing to engage in those practices that violate its duties and contractual and legal obligations owed to the Plaintiffs and the Class described herein," and "to compel Defendant Sentry to give notice to all class members of the effect of the *Jordan* and *Weed Warrior* decisions on their UM/UIM coverage." (Doc. 131 at 26). Also, Plaintiffs seek a declaratory judgment that "will establish the rights and obligations of the parties with respect to the claims set forth [in the Complaint.]" (*Id.*)

Defendants argue that these claims for relief should be dismissed because: (a) Plaintiffs do not allege the irreparable harm needed for injunctive relief; (b) there is no actual controversy

warranting declaratory or injunctive relief for the class; and (c) Plaintiffs lack standing to seek class-wide declaratory and injunctive relief under the UIPA.

    *a.  Irreparable Harm*

Under New Mexico law, a request for injunctive relief can be made only upon a showing of irreparable harm. *State ex rel. State Highway & Transp. Dep't of N.M. v. City of Sunland Park*, 3 P.3d 128, 134 (N.M. Ct. App. 2000). Defendants allege that Plaintiffs cannot make a plausible allegation of irreparable harm in this case. As a result, Defendants argue Plaintiffs' claims for injunctive relief should be dismissed as a matter of law.

"Injunctions are harsh and drastic remedies which should issue only . . . where there is a showing of irreparable injury for which there is no adequate and complete remedy at law." *Padilla v. Lawrence*, 685 P.2d 964 (N.M. Ct. App. 1984). An "irreparable injury" is an injury "which cannot be compensated or for which compensation cannot be measured by any certain pecuniary standard." *State Highway*, 3 P.3d at 134 (citation omitted). The "injury must be actual and substantial, or an affirmative prospect thereof, and not a mere possibility of harm." *Id.* It is not enough that the party seeking injunctive relief merely claims irreparable harm; he must come forth with evidence of the irreparability of his harm or inadequacy of any remedy. *Id.*

Defendants cite *Valdez v. Metropolitan Property and Casualty Insurance* in support of their argument that Plaintiffs failed to allege irreparable harm. 2012 WL 1132414. In *Valdez*, plaintiffs filed a petition for declaratory judgment and injunctive relief against seven defendant insurance companies.[3] *Id.* at *1. Plaintiffs were insureds whose policies provided UM coverage with limits less than the relevant liability limits in the same policy without a valid written rejection of equal limits UM coverage. *Id.* at *1. Plaintiffs alleged that the defendants failed to comply with the New Mexico Supreme Court's decisions in *Weed Warrior* and *Jordan*. *See*

---

[3] Their petition was removed to federal court by the defendants.

*Weed Warrior*, 245 P.3d 1209; *Jordan*, 245 P.3d 1214. The sought-after declaratory judgment would have retroactively reformed all policies issued to plaintiffs and class members so as to provide equal limits coverage where the policy did not already do so. Similarly, the requested injunctive relief sought two related remedies. First, plaintiffs sought an order requiring each defendant to provide notice to all insured of their rights regarding UM coverage. And, second, plaintiffs requested an order requiring each defendant to adopt a UM selection form that complied with the requirements of *Jordan*. *Id.* at *3.

The *Valdez* Court dismissed plaintiffs' request for injunctive relief. It gave two reasons for this holding. First, the court found that NMSA § 59A-16-30 does not permit plaintiffs to seek injunctive relief under the UIPA, but only allows the plaintiffs to seek and establish an entitlement to injunctive relief under a separate cause of action. *Id.* at *23. Second, the court held that plaintiffs failed to allege irreparable harm, which obviated their claim for injunctive relief. *Id.* at *24.

On the issue of irreparable harm, this Court does not find Defendants' reliance on *Valdez* persuasive. According to the *Valdez* Court, because any policy which was obtained in violation of the UIPA would be retroactively reformed, no member of the class would suffer irreparable harm. *Id.* at *24. Further, the *Valdez* Court reasoned that only those insured that were involved in an accident and had their claim for equal limits coverage rejected would be injured. *Id.* This is contrary to Plaintiffs' allegations, which name at least three distinct injuries. First, Plaintiffs allege that the putative class is harmed because it has not received notice of its right to make a claim. Second, Plaintiffs allege that Defendants sent out defective and misleading "IMPORTANT NOTICES" after *Jordan*, which made no mention of the Plaintiffs' rights. (*See*

Doc. 131 at ¶ 63). And, third, Plaintiffs allege that the Defendants were not following the law by automatically reforming nonconforming policies. (*Id.* at ¶ 64).

In particular, the issue of notice is central to Plaintiffs' Complaint. This is understandable. The promises of *Jordan* are significantly diminished if a potential claimant is not informed of his or her rights. This is especially true for those putative class members who have a right to make retroactive claims for coverage. Without notice, it is unlikely these claimants would ever make a claim for the coverage they are entitled to as a matter of law. Thus, Plaintiffs can plausibly claim these claimants are injured – and will continue to be harmed – in the absence of notice.

The harder question is how much pecuniary harm is caused by the lack of notice. Plaintiffs claim it is difficult to assign a particular amount of pecuniary harm resulting from putative class members' failure to have been made aware of their rights to UM/UIM coverage. (*See* Doc. 120 at 13-14). The Court agrees with this assessment. While the Court agrees that the cost of reforming a single policy is quantifiable, it is much more difficult to assess the value of notice. To those who never were denied equal limits UM/UIM coverage, the value of notice is limited. For others, who were wrongfully denied equal limits UM/UIM coverage, notice will result in a retroactive claim. Since, at this juncture, there is no ascertainable, definite pecuniary value for this notice, the Court will not dismiss Plaintiffs' claim for injunctive relief.

### b.  Actual Controversy

Defendants contend that Plaintiffs' claims for injunctive and declaratory relief are not ripe. (Doc. 113 at 9). "In short, the doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in clean-cut and concrete form." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (quotations

10

omitted); *see also Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004) (holding ripeness issue focuses on "whether the harm asserted has matured sufficiently to warrant judicial intervention" (quotation omitted)). Courts apply a two-factor ripeness analysis, initially considering "whether an issue is fit for judicial review." *New Mexicans for Bill Richardson*, 64 F.3d at 1499. At this first step, "the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (quotation omitted). The second prong of the ripeness analysis considers "the hardship to the parties of withholding court consideration." *Morgan*, 365 F.3d at 890 (quotation omitted).

Defendants focus their ripeness arguments on the issue of harm. In short, Defendants claim that Plaintiffs have no plausible theory of injury because (1) policies without UM/UIM rejections are already reformed by operation of law, and (2) Sentry voluntarily agreed to reform UM/UIM coverage to the maximum available under New Mexico law if an insured previously executed a pre-*Jordan* rejection form. Thus, according to Defendants, since the insurers have satisfied their legal obligations to the Plaintiffs, there is no actual dispute over which this court can exercise jurisdiction.

This is, of course, contrary to the Court's finding above. The Court decided that Plaintiffs adequately plead at least three distinct injuries. In addition to the injury created by lack of notice, Plaintiffs plead injuries under contract law and the UPA.[4] These claims are not abstract or contingent on future events. They are concrete, imminent, injuries suffered by the Plaintiffs. As a result, the constitutional requirements of the ripeness doctrine are satisfied. *See Am. Civil*

---

[4] This finding distinguishes this case from *Valdez*, where the court found that plaintiffs' claim for declaratory relief was not ripe. *See Valdez*, 2012 WL 1132414 at *27. In *Valdez*, the court dismissed plaintiffs' claim for injunctive relief under UPA, because they did not plead irreparable harm. Once the claim for injunctive relief was dismissed, all that was left was plaintiffs' request for declaratory relief. The *Valdez* Court held the request for declaratory relief was merely an attempt to obtain an advance ruling on an affirmative defense – that the claimant has rejected equal limits UM/UIM coverage. Thus, plaintiffs' request for declaratory relief was not ripe. *Id.* at *29. Here, Plaintiffs have claims beyond their request for declaratory relief, which create an actual controversy.

*Liberties Union v. Johnson,* 194 F.3d 1149, 1154 (10th Cir. 1999) ("[I]f a threatened injury is sufficiently 'imminent' to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied.")

    *c.   Standing under UIPA*

    Finally, Defendants argue that Plaintiffs' claims for injunctive and declaratory relief under the UIPA fail as a matter of law because the New Mexico legislature did not intend to grant a right of action to private plaintiffs seeking only equitable relief, as opposed to damages. *See* NMSA 1978, §§ 59A-16-1 through 30.[5]

    The New Mexico Legislature passed the UIPA "to regulate trade practices in the insurance business and related businesses," including "practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices." § 59A-16-2. It is undisputed that under the UIPA, an individual who has suffered damages under the statute can recover "actual damages." § 59A-16-30. Yet, whether an individual may bring an action for equitable relief under the statute is an open question.

    In *Valdez* – which Defendants again cite in support of their argument – the court answered this very question. The *Valdez* Court held that the plain language of the statute confines private causes of actions to persons who have "suffered damages" to recover "actual damages." *See* § 59A-16-30. Further, because the statute grants the power to seek an injunction to the Superintendent of Insurance and fails to include such a grant to private litigants, the *Valdez* Court held that the New Mexico Legislature did not intend for private litigants to be able to seek injunctive relief under the statute. 2012 WL 1132414 at *23.

    The Court agrees with the *Valdez* Court and adopts its reasoning on this issue. The plain language of the statute clearly limits recovery to actual damages and only gives the

---

[5] The statutory section is titled the Trade Practices and Frauds Act.

Superintendent of Insurance the power to seek injunctions. Consequently, since Plaintiffs request only equitable relief under the UIPA, this claim (Count II) will be dismissed without prejudice.

However, as allowed by Section 59A-16-30, Plaintiffs are free to pursue their claims for injunctive and declaratory relief under another cause of action. *See New Mexico Life Ins. Guar. Ass'n v. Quinn & Co., Inc.*, 809 P.2d 1278, 1290 (N.M. Ct. App. 1991). Accordingly, Plaintiffs claims for injunctive and declaratory relief under other theories remain valid.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 113) is **GRANTED IN PART** and **DENIED IN PART** in accordance with the opinion above.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

13