IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DELBERT SOSEEAH, for himself
and others similarly situated,
MAXINE SOSEEAH, for herself and
others similarly situated, and
JOHN BORREGO, for himself
and others similarly situated,**

      **Plaintiffs,**

v.                                                                                                          **No. CIV 12-01091 RB/KK**

**SENTRY INSURANCE, a Mutual Company,
and any other related business entities
including parent companies, consolidated
tax filers and subsidiaries including
DAIRYLAND INSURANCE COMPANY,
PEAK PROPERTY AND CASUALTY
INSURANCE COMPANY, and VIKING
INSURANCE COMPANY OF WISCONSIN,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Class Certification. (Doc. 107). Jurisdiction arises under 28 U.S.C. § 1332(d). For the reasons set forth below, this motion will be **GRANTED**.

**I.**    **Background**

This putative class action arises out of automobile insurance policies sold by Defendant Sentry Insurance and its subsidiaries, Defendant Dairyland Insurance Company, Defendant Viking Insurance Company of Wisconsin, and Defendant Peak Property & Casualty Insurance Corporation (collectively "Defendant Sentry") in the State of New Mexico. Plaintiffs claim that

Defendant Sentry did not provide uninsured/underinsured motorist ("UM/UIM") coverage as required by New Mexico law as espoused by the New Mexico Supreme Court in October 2010. *See Jordan v. Allstate Ins. Co.*, 245 P3d 1214 (N.M. 2010) and *Progressive Nw. Ins. Co.*, 245 P.3d 1209 (N.M. 2010). In these decisions, the New Mexico Supreme Court held that insurance companies are obligated to provide UM/UIM limits at the same level of coverage as liability limits, absent a legally valid rejection of UM/UIM coverage.

In the Fourth Amended Class Action Complaint for Injunctive and Declaratory Relief, Plaintiffs claim Defendant Sentry violated the law by: (1) issuing policies that failed to provide UM/UIM coverage required by law; (2) using UM/UIM rejection forms that were deceptive, inadequate and legally insufficient for the purpose of reducing Defendant Sentry's UM/UIM insurance exposure; (3) failing to properly reform those illegally issued policies when the purported rejections of UM/UIM coverage which Defendant Sentry utilized were declared legally insufficient by the New Mexico Supreme Court in October 2010; (4) failing to notify their policyholders of UM/UIM coverage in any form whatsoever until more than fifteen months after the New Mexico Supreme Court mandated coverage; (5) making the notification obscure and complex in an effort to limit claims and minimize Defendant Sentry's financial exposure; and (6) requiring policyholders to sign UM/UIM putative rejections within a few months of October 2010 and then using those rejections to deny UM/UIM coverage for accidents that occurred prior to the waivers being signed. (Doc. 131).

Plaintiffs seek damages individually, declaratory relief, an injunction prohibiting Defendant Sentry from continuing to engage in practices that violate its duties and contractual and legal obligations owed to Plaintiffs and the proposed class, an injunction requiring

Defendant Sentry to give notice to all class members of the effect of the *Jordan* and *Weed Warrior* decisions on their UM/UIM coverage, attorneys' fees and costs. (*Id.*)

Plaintiffs define the proposed class as follows: All insureds under policies issued in New Mexico by Sentry and its related entities including Peak, Viking and Dairyland from May 20, 2004 to April 1, 2011 in which UM/UIM coverage was purportedly rejected. Because no such rejections were in conformance with New Mexico law as set forth in *Jordan* and *Weed Warrior,* all such insureds are entitled to reformation and proper and adequate notice. Included as subclasses are: (1) insured who received the "IMPORTANT NOTICE" and "FINAL NOTICE" attached as Exhibits A and B; and (2) insured who received the "IMPORTANT NOTICE OF POTENTIAL COVERAGE" attached as Exhibit C. (Docs. 131, 133).

**II.     Standard**

The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only. *Wal-Mart Stores, Inc. v. Dukes,* \_\_\_\_ U.S. \_\_\_, 131 S.Ct. 2541, 2550 (2011). The Court has considerable discretion in making class certification decisions. *See Tabor v. Hilti, Inc.,* 703 F.3d 1206, 1227-28 (10th Cir. 2013) (explaining that because class certification involves "intensely practical considerations," the decision lies within the discretion of the trial court). The Court must, however, conduct a "rigorous analysis" to determine whether the putative class satisfies the requirements of Rule 23. *Comcast Corp. v. Behrend,* \_\_\_\_ U.S. \_\_\_\_, 133 S.Ct. 1426, 1431-33 (2013); *Wal-Mart*, 131 S.Ct. at 2551; *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). This "rigorous analysis" will "frequently . . . entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart,* 131 S.Ct. at 2551. Nonetheless, the Court should not conduct a mini-trial to determine if the class could

actually prevail on the merits of their claims. *See Amgen Inc. v. Conn. Retirement Plans & Trust Funds,* ___ U.S. ___, 133 S.Ct. 1184, 1194-95, 1201 (2013); *Wal-Mart,* 131 S.Ct. at 2552 n. 6.

### III. Class Action Requirements

Rule 23(a) requires Plaintiffs to demonstrate that: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there is a question of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). FED. R. CIV. P. 23(a). These prerequisites "limit the class claims to those fairly encompassed by the named plaintiff's claims. *Wal-Mart*, 131 S.Ct. at 2550 (quoting *Falcon*, 457 U.S. at 156) (internal quotation marks omitted).

In addition to satisfying the four prerequisites of Rule 23(a), "[t]he party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast*, 133 S.Ct. at 1432. Plaintiffs rely on Rule 23(b)(2), which requires plaintiffs to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" FED. R. CIV. P. 23(b).

### IV. Discussion

#### A. Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impractical. *See* FED. R. CIV. P. 23(a)(1). The Tenth Circuit has not adopted a specific numerical threshold for class certification and has stated that the numerosity inquiry must be made based on the particular circumstances of the case. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006); *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978). The leading treatise on class actions has

stated that numerosity "is an impracticability of joinder rule, not a strict numerosity rule. It is based on considerations of due process, judicial economy, and the ability of claimants to institute suits." William R. Rubenstein, Alba Conte, Herbert Newberg, NEWBERG ON CLASS ACTIONS § 3:11 (5th ed. 2011). Numerosity also requires that the members of the class be ascertainable with the use of objective criteria. *Joseph v. Gen. Motor Corp.*, 109 F.R.D. 635, 638 (D. Colo. 1986) (finding numerosity in a class of at least 1,760 potential class members where those members could be identified as former owners or lessees of allegedly defective vehicles notwithstanding the fact that some of them were satisfied customers with no wish to assert claims against the defendant). Defendant Sentry conceded in discovery that at least 36,000 potential claimants signed rejections and may be entitled to reformation of their policies. (Doc. 131). Defendant Sentry does not contest that joinder of so many individuals would be impracticable. Accordingly, the Court finds that the numerosity requirement is satisfied.

      **B.**    **Commonality**

The second Rule 23(a) requirement is the existence of questions of law or fact common to the class. *See* FED. R. CIV. P. 23(a)(2). In order to satisfy the prerequisite of commonality, a putative class must raise a common contention that is "capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S.Ct. at 2551. "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart,* 131 S.Ct. at 2556. The Newberg treatise has observed that *Wal-Mart* "defined common question with more specificity than it had in prior decisions while reiterating the importance of centrality." NEWBERG ON CLASS ACTIONS § 3:18. Notably, *Wal-Mart* teaches that Plaintiffs must bridge the gap between individual claims of harm and the "existence of a class of persons who

have suffered the same injury as that individual." *Wal-Mart,* 131 S.Ct. at 2553 (quotation omitted). In other words, commonality requires the plaintiff to demonstrate that the "class members have suffered the same injury for the same reason*,* such as a uniform policy or practice that is illegal." *DL v. Dist. of Columbia,* ___ F.Supp.2d ____, 2013 WL 6913117, at *6 (D. D.C. 2013).

The facts of *Wal-Mart* serve to illustrate this distinction. In *Wal-Mart*, the Court found a lack of commonality where the proposed class alleged the members had all suffered gender-based employment discrimination in violation of Title VII. *Wal-Mart*, 131 S.Ct. at 2555. Employment discrimination claims, however, may arise in many ways and certifying a class based on a multitude of facts and theories would not promote a classwide resolution. *Id.* By contrast, in this case, Plaintiffs allege that Defendant Sentry failed to properly inform and notify its policyholders of the UM/UIM coverage available to them after *Jordan* and *Weed Warrior*. Certifying a class based on this allegation would "generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, at 2551. Therefore, *Wal-Mart* supports a determination of commonality.

Defendant Sentry contends that commonality is not present because there are factual differences between proposed class members' claims in that some were involved in accidents with uninsured or underinsured motorists and some were not involved in such accidents. Significantly, the Tenth Circuit has held that "factual differences between class members' claims do not defeat certification where common questions of law exist. *DG ex rel. Stricklin v. Devaugh,* 594 F.3d 1188, 1195 (10th Cir. 2010) (holding that commonality existed in a putative class of children exposed to the same risk of harm from the defendant agency's inadequate oversight despite the fact that most of the children in the program suffered no physical harm). In

6

that Plaintiffs' allege that the proposed class members all were subjected to the same injury, commonality is present.

Defendant Sentry asserts that recent rulings from the Supreme Court have made it more difficult to certify a class. To be sure, *Wal-Mart* and *Comcast* arguably raised the bar on class certification, but they did not overrule the Tenth Circuit's earlier holding in *Stricklin* in any relevant manner. *Compare Wal-Mart*, 131 S.Ct. at 2556 and *Comcast*, 133 S.Ct. at 1432, *with Stricklin*, 594 F.3d at 1195. In *Wal-Mart*, the Supreme Court found a lack of commonality where factual differences among the large putative class would have made it impossible to determine whether employment discrimination occurred and what caused it. *Wal-Mart,* 131 S.Ct. at 2556 Similar to the plaintiffs in *Stricklin*, however, the potential class members in this case experienced the same injury in spite of the factual differences between them. In *Stricklin,* the injury was the unacceptably high risk of child abuse. *Stricklin,* 594 F.3d at 1195. In this case, the injury is the lack of proper notice of the coverage available to the policy holders after *Jordan* and *Weed Warrior*. More specifically, Plaintiffs allege that the class members have suffered the same alleged injuries, *i.e.*, they have been denied proper notice of the reformation of their policies and they have been subjected to unfair, deceptive, and unconscionable trade practices. Because Defendant Sentry's alleged treatment of all class members was substantially similar, Plaintiffs have met the commonality requirement.

**C.     Typicality**

The third Rule 23(a)(3) requirement is that the claims of the proposed class be typical of the claims of the class. *See* FED. R. CIV. P. 23(a)(3). The "typicality" requirement "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart*, 131 S.Ct. at 2550. Interestingly, the commonality and typicality

7

requirements "tend to merge" into a single inquiry. *Wal-Mart,* 131 S.Ct. at 2551 n.5 (quoting *Falcon,* 457 U.S. at 157 n.13). "However, the overlap between typicality and commonality should not be exaggerated. Each proceeds from a different perspective: the commonality inquiry focuses on what characteristics are shared among the whole class while the typicality inquiry focuses on the desired attributes of the class representative." NEWBERG ON CLASS ACTIONS § 3:31.

It bears underscoring that "[t]he interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality. *Stricklin,* 594 F.3d at 1198. Rather, the typicality requirement "is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Pigford v. Glickman*, 182 F.R.D. 341, 349 (D. D.C. 1998). The Tenth Circuit has explained that "like commonality, typicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *Stricklin,* 594 F.3d at 1199 (citing *Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir. 1982) (finding commonality and typicality where all members of class were in danger of being subjected to certain disciplinary practices regardless of their individual differences)).

The class allegations in *Stricklin* are materially similar to Plaintiffs' class allegations. In *Stricklin*, the proposed class consisted of children exposed to the same risk of harm from the defendant agency's inadequate oversight. In this case, the proposed class consists of policyholders who received inadequate notice from Defendant Sentry. Similar to the claims in *Stricklin*, the claims herein arise from the same course of events and all proposed class members

were subjected to the same harmful practices. In that Plaintiffs seek classwide injunctive relief, Plaintiffs have satisfied the typicality requirement.

### D.     Adequacy

The fourth Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "[T]he standard for adequacy splits into two prongs: adequacy of the proposed class representative and adequacy of the attorneys seeking appointment as class counsel." NEWBERG ON CLASS ACTIONS § 3:54. The Tenth Circuit has identified the following questions relevant to the adequacy inquiry: (1) whether the named plaintiffs and their counsel have any conflicts with other class members; and (2) whether the named plaintiffs and their counsel will vigorously prosecute the action on the class's behalf. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002). Defendant Sentry challenges the adequacy of the Plaintiffs to serve as class representatives as well as the adequacy of Plaintiffs' counsel.

As a basis for their challenge to the adequacy of Plaintiffs, Defendant Sentry argues that Plaintiffs' decision not to pursue classwide monetary damages raises a conflict of interest with the proposed class. Plaintiffs seek damages only for themselves, and therefore they do not implicate possible future claims for damages by other members of the proposed class. *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 n.14 (3d Cir. 2007). Generally, underlying damage claims are not barred by membership in a class seeking solely equitable relief. *See Maestas v. Salt Lake Cnty.*, 2 F.3d 1160 (10th Cir. 1993); *McNeil v. Guthrie*, 945 F.2d 1163, 1166 n. 4 (10th Cir. 1991); *Hiser v. Franklin*, 94 F.3d 1287, 1291 (10th Cir. 1996); *Norris v. Slothouber*, 718 F.2d 1116, 1117 (D.C. Cir. 1983); *Thorpe v. Dist. of Columbia*, ___ F.R.D. ___, 2014 WL 1273134 (D. D.C. 2014). In some cases, a plaintiff in a later suit

might be barred by collateral estoppel or issue preclusion from contesting an issue of fact or law that is decided in the defendant's favor. *See Cooper v. Fed. Reserve Bank*, 467 U.S. 867, 874 (1984) ("A judgment in favor of either side [in a class action] is conclusive in a subsequent action between them on any issue actually litigated and determined, if its determination was essential to that judgment.") However, there is no danger of issue preclusion in this case because the scope of the proposed class action is limited to injunctive relief and does not encompass any damages suffered by members of the proposed class. Because certification under Rule 23(b)(2) will not preclude possible future claims for damages by members of the proposed class, Plaintiffs' decision not to pursue classwide monetary damages does not raise a conflict of interest.

Additionally, Defendant Sentry asserts that Plaintiffs are inadequate to represent the class due to their statements that suggest that they have limited knowledge about the legal theories of the case and their reliance on counsel for legal advice. It is well-established that "lack of knowledge about the facts or legal theories of a particular case will usually not bar a finding that the proposed representative can adequately represent the class." NEWBERG ON CLASS ACTIONS § 3:67. "Adequacy is satisfied, though, if the plaintiff has some rudimentary knowledge of her role as a class representative and is committed to serving in that role in the litigation." *Id*.

Defendant Sentry relies on Plaintiff Borrego's criminal history as evidence of inadequacy but cites no controlling authority to support this contention. "Most courts have rejected the contention that a proposed representative is inadequate because of prior unrelated unsavory, unethical, or even illegal conduct. NEWBERG ON CLASS ACTIONS § 3:68. Notably, Rule 23(a)(4) does not require proposed class representatives to have an unblemished record, legal knowledge or a complete understanding of the representative's role in class litigation. Rather, "[a] class

representative need only possess a minimal degree of knowledge necessary to meet the adequacy standard." *New Directions,* 490 F.3d at 313 (internal quotations omitted). Plaintiffs' deposition testimony demonstrates that they are aware of their duties as class representatives, they have stayed informed of the proceedings, and they have assisted counsel in making decisions. (Docs. 115-9, 115-10, 115-12.) Accordingly, the Court concludes that Plaintiffs are adequate representatives of the class.

In addition to asserting that the Plaintiffs are inadequate, Defendant Sentry contends that Plaintiffs' attorneys are inadequate. As grounds for this assertion, Defendant Sentry claims the proposed class is flawed and unworkable, Plaintiffs were unprepared for their depositions, and neither *Wal-Mart* nor *Curry v. Great Nw. Ins. Co.*, 320 P.2d 482 (N.M. 2013) was cited in the Motion and Memorandum for Class Certification. None of these factors has merit. "The adequacy of counsel prong of Rule 23(a)(4) asks whether counsel are qualified, experienced and generally able to conduct the litigation and whether counsel will vigorously prosecute the interests of the class." NEWBERG ON CLASS ACTIONS § 3:72. "These standards are easily met, with members of the bar in good standing typically deemed qualified and competent to represent a class absent evidence to the contrary." *Id*. As discussed *supra*, the class definition is workable and appropriate and Plaintiffs are adequate to serve as class representatives. Moreover, *Wal-Mart* and *Curry* are not adverse to Plaintiffs' claims, and Plaintiffs' counsel cited these authorities in their reply brief. Plaintiffs' briefs are well-written and cite pertinent authorities. Indeed, there is no merit to Defendants' attack on the qualifications of Plaintiffs' attorneys.

The record demonstrates that Plaintiffs' attorneys, Kristina Martinez, Linda Hemphill, and Jon Howard, have extensive experience in civil law and class actions. (Doc. 107-12, 107-13, 107-14).

Ms. Martinez received a J.D. degree, cum laude, from the University of New Mexico in 2006. (Doc. 107-12). From 2006 to 2011, Ms. Martinez practiced civil litigation with the law firm of Holland & Hart LLP in Santa Fe, New Mexico. (*Id.*) Since 2012, Ms. Martinez has practiced civil litigation with the law firm of Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu LLP. (*Id.*) Ms. Martinez focuses her practice in the areas of class action and complex civil litigation. (*Id.*)

Ms. Hemphill received a J.D. degree from Northwestern University in 1983. (Doc. 107-13). During her third year of law school, Ms. Hemphill was a visiting student at Willamette University Law School where she placed third in her class. (*Id.*) After law school, Ms. Hemphill served as a law clerk to the Presiding Judge of the Oregon Court of Appeals. (*Id.*) In 1985, Ms. Hemphill moved to New Mexico and worked for civil law firms. (*Id.*) Since 1992, Ms. Hemphill has maintained a private law practice focused on civil litigation, primarily in the areas of personal injury, employment, insurance, and complex litigation. (*Id.*) In 2012, Ms. Hemphill and Mr. Howard filed a class action lawsuit bringing claims substantially similar to the claims in the instant case in the case styled *Martinez, et al. v. Hallmark Insurance Company*, and numbered D-101-CV-2012-01429 in the First Judicial District Court of the State of New Mexico. The *Martinez* case has been preliminarily settled. (*Id.*) Additionally, Ms. Hemphill has litigated at least thirty cases in the United States District Court for the District of New Mexico and at least as many cases in the district courts throughout the State of New Mexico. (*Id.*)

Mr. Howard received a J.D. degree from the University of New Mexico School of Law in 1990. (Doc. 107-14). From 1991 through the present he has maintained a civil law practice in New Mexico with a focus on personal injury and mass tort claims. (*Id.*) Since 2011, Mr. Howard has been of counsel to the Hemphill Firm, P.C. and its predecessor firm, Hemphill and Grace,

P.C. in Santa Fe, New Mexico. (*Id.*) During the course of his career, Mr. Howard has handled hundreds of personal injury claims, including UM/UIM and bad faith insurance claims. (*Id.*) Mr. Howard was counsel of record in the class action lawsuit styled *Jaramillo, et al. v. Government Employees Insurance Company, et al.*, No. 10cv01095 JH/LFG. (*Id.*) In addition, Mr. Howard and Ms. Hemphill are co-counsel with the Miller Law Firm, LLC in connection with mass tort claims. (*Id.*)

John C. Bienvenu received a J.D. degree ("With Distinction") from Stanford Law School in 1988. (Docs. 107-11). Mr. Bienvenu has over twenty-five years of civil law practice experience. (*Id.*) Since January 1, 2004, Mr. Bienvenu has been a partner with the law firm of Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu LLP. (*Id.*) In Mr. Bienvenu's opinion, Ms. Martinez, Ms. Hemphill, and Mr. Howard have the resources, experience and dedication necessary to fully and adequately represent the class in this proceeding. (*Id.*) In light of their qualifications and experience as demonstrated by the record, the Court finds that Plaintiffs' attorneys are adequate to represent the class. (*Id.*)

### E.     Rule 23(b)(2)

In addition to the Rule 23(a) requirements, Plaintiffs "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast*, 133 S.Ct. at 1432. Plaintiffs rely on Rule 23(b)(2), which requires plaintiffs to show that Defendant Sentry "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b). Certification under Rule 23(b)(2) is appropriate when "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 131 S.Ct. at 2557.

The Tenth Circuit has explained that Rule 23(b)(2) "imposes two independent, but related requirements" upon those seeking class certification. *Stricklin*, 594 F3d at 1199 (citing *Shook v. Bd. of Cnty. Comm'rs of El Paso,* 543 F.3d 597, 604 (10th Cir. 2008)). First, plaintiffs must demonstrate defendants' actions or inactions are "based on grounds generally applicable to all class members." *Id.* Second, plaintiffs must also establish the injunctive relief they have requested is "appropriate for *the class as a whole.*" *Id.* (emphasis in original). Together these requirements demand "cohesiveness among class members with respect to their injuries. . . ." *Id.*

"This cohesiveness, in turn, has two elements." *Stricklin,* 594 F3d at 1199. "First, plaintiffs must illustrate the class is sufficiently cohesive that any classwide injunctive relief satisfies Rule 65(d)'s requirement that every injunction 'state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required.'" *Id.* (quoting FED. R. CIV. P. 65(d)). "Second, cohesiveness also requires that class members' injuries are 'sufficiently similar' that they can be remedied in a single injunction without differentiating between class members. *Id*. "Rule 23(b)(2)'s bottom line, therefore, demands at the class certification stage plaintiffs describe in reasonably particular detail the injunctive relief they seek "such that the district court can at least 'conceive of an injunction that would satisfy [Rule 65(d)'s] requirements,' as well as the requirements of Rule 23(b)(2)." *Id*. at 1200 (quoting *Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004)).

Defendants attack class certification on the grounds that the requested injunction is too vague. However, the Tenth Circuit has specifically held that plaintiffs are not required to "come forward with a finished injunction at the class certification stage." *Shook*, 543 F.3d at 603. Plaintiffs requested the following remedies: (1) an injunction that prohibits Defendant Sentry from continuing to engage in practices that violate its duties and contractual and legal obligations

owed to Plaintiffs and the proposed class; and (2) an injunction requiring Defendant Sentry to give notice to all class members that the *Jordan* and *Weed Warrior* decisions mandate that they are entitled to UM/UIM coverage equal to liability coverage, and of their right to make a UM/UIM claim notwithstanding the fact that they had previously rejected UM/UIM coverage, because the rejection was invalid. (Docs. 107 and 131). The court concludes that Plaintiffs in this case have been sufficiently specific about the requested classwide injunctive relief to meet the requirements of Rule 23(b)(2) and Rule 65. Accordingly, the Court finds that Plaintiffs have met the requirements of Rule 23(b)(2) for certification of the proposed class.

V.   **Conclusion**

Plaintiffs have established the requirements for certification of the proposed class pursuant to Federal Rule of Civil Procedure 23(b)(2). A class action is the fairest and most efficient manner of litigating the injunctive claims at issue in the present case.

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' Motion for Class Certification, (Doc. 107), is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**