### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

DELBERT SOSEEAH, for himself and
others similarly situated, MAXINE SOSEEAH,
for herself and others similarly situated, and
JOHN BORREGO, for himself and others
similarly situated,

        Plaintiffs,

v.                                     No. CIV 12-01091 RB/KK

SENTRY INSURANCE, a Mutual Company,
and any other related business entities including
parent companies, consolidated tax filers, and
subsidiaries, including DAIRYLAND INSURANCE
COMPANY, PEAK PROPERTY AND CASUALTY
INSURANCE COMPANY, and VIKING
INSURANCE COMPANY OF WISCONSIN,

        Defendants.

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Second Motion and Memorandum for Class

Certification on Remand from the Tenth Circuit Court of Appeals, filed on April 15, 2016 (Doc.

155). Having considered the submissions of counsel and relevant law, the Court will **DENY**

Plaintiffs' motion and **SET** an expedited briefing schedule for any future motion to certify.

I.      **Background**[1]

This putative class action arises out of allegedly misleading notices Defendant Sentry

Insurance and its subsidiaries, Defendant Dairyland Insurance Co., Defendant Viking Insurance

---

[1] The Court draws facts from the Fourth Amended Complaint, as well as from the parties' briefs in both the previous
and the current motions for class certification. (*See* Docs. 107, 115, 121, 131, 155, 159, 162, 165, 166.)

Co. of Wisconsin, and Defendant Peak Property & Casualty Insurance Corp. (collectively Defendant Sentry) sent to their insureds regarding automobile insurance policy benefits. Following the seminal New Mexico Supreme Court cases of *Jordan v. Allstate Ins. Co.*, 245 P.3d 1214 (N.M. 2010)*, and *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 245 P.3d 1209 (N.M. 2010) (*Weed Warrior*), Defendant Sentry mailed three notices to certain of its insureds. Plaintiffs claim Defendant Sentry designed the notices to confuse and mislead its insureds into rejecting the benefits they were entitled to after *Jordan* and *Weed Warrior*. The Court granted class certification in 2014 for Plaintiffs' general class, and the Tenth Circuit reversed on appeal, finding that the general class did not meet the commonality requirements of Federal Rule of Civil Procedure 23(a)(2). The Tenth Circuit remanded the case, directing the Court to determine whether either or both of the identified subclasses meet the requirements of Rule 23.

> **A.      History Relevant to UM/UIM Benefits**

In October 2010, the New Mexico Supreme Court "issued two related decisions addressing the provision of uninsured/underinsured motorist (UM/UIM) coverage by insurers to New Mexico residents." *Soseeah v. Sentry Ins.*, 808 F.3d 800, 803 (10th Cir. 2015). The court first found that insurers are required to offer "UM/UIM coverage in an amount equal to the liability limits of the policy . . . ." *Id.* (quoting *Weed Warrior*, 245 P.3d at 1214). Insureds can opt to purchase some lower amount of UM/UIM coverage, thereby rejecting the "maximum amount of coverage statutorily possible." *Id.* (quoting *Weed Warrior*, 245 P.3d at 1214). The court later specified that an insured's "rejection of UM/UIM coverage . . . must be made in writing[,] and . . . [that] insurers must provide" a list of the premium charges for the UM/UIM coverage options available "so that the insured can make a knowing and intelligent decision to receive or reject the full amount of coverage to which the insured is statutorily entitled." *Id.* (quoting *Jordan*, 245 P.3d at 1217). "If

2

an insurer fails to obtain a valid rejection [for any reason], the policy will be reformed to provide UM/UIM coverage equal to the limits of liability." *Id.* (quoting *Jordan*, 245 P.3d at 1217). The court applied its decision retroactively and found that all associated costs of compliance "would be borne solely by insurers." *Id.* (citing *Jordan*, 245 P.3d at 1223).

### B. Factual and Procedural History of the Case

In its first attempt to comply with the *Weed Warrior and Jordan* decisions in 2011, Defendant Sentry mailed two notices to every policyholder with a policy then in force who had previously rejected UM/UIM coverage. (Doc. 131 (4th Am. Compl.) ¶ 20.) These policyholders make up the members of Plaintiffs' first subclass (Subclass 1). (*See* Doc. 155, at 5.) The first of these two notices, entitled "IMPORTANT NOTICE," read in relevant part:

> FAILURE TO RETURN THE ENCLOSED FORM WILL RESULT IN AN INCREASE TO YOUR PREMIUM
> In December 2010, the New Mexico Supreme Court issued a ruling requiring new information to be provided with Uninsured Motorist (UM) coverage selection forms. As a result, a change has been made to the (UM) coverage selection form you signed for your policy . . . . Failure to sign and return the enclosed form will result in a change from your current UM coverage selection to the maximum coverage allowed on your policy. If we are forced to change your coverage, your premium will increase.

(Doc. 107-E, at 1.) The second, "FINAL NOTICE," contained the same language as above, along with reminders to sign and return the enclosed form. (*See* Doc. 107-F, at 1.) Defendant Sentry asserts that it designed these forms so that its insureds could save money. (Doc. 159, at 15.) Unless the insureds submitted a valid rejection form declaring their intention to avoid paying for UM/UIM coverage, the policies would be reformed automatically upon renewal, thereby potentially charging the insureds an additional, unwanted premium for the UM/UIM coverage. (*See* Docs. 115, at 6; 159, at 2, 6.)

3

In January 2012, Defendant Sentry took an additional step: it sent a third notice, entitled "IMPORTANT NOTICE OF POTENTIAL COVERAGE" to all insureds who had reported an accident in the relevant pre-*Jordan* time period. (*See* Docs. 115, at 7; 159, at 6.) These policyholders make up the members of Plaintiffs' second subclass (Subclass 2). (*See* Doc. 155, at 5–6.) In relevant part, the third notice read:

> You are receiving this letter because our records show you may have been insured . . . for your accident of [DATE]. Based on recent New Mexico Supreme Court decisions, including . . . Weed Warrior . . . and Jordan . . . , the availability and limits of [UM/UIM] coverage under your policy for this claim or other accidents you were involved in while your policy was in force may have been affected. . . . This letter is to advise that if you had rejected [UM/UIM] coverage, selected limits of coverage that were lower than your Liability limits, or had multiple vehicles on your policy and selected Non-Stacked [UM/UIM] limits, then your policy is being reformed to provide coverage in alignment with the rulings by the New Mexico Supreme Court. . . .
>
> It is possible, based on the Supreme Court rulings, that [UM/UIM] coverage benefits or additional [UM/UIM] benefits are available to you with regards to the above mentioned loss. . . .
>
> If you or anyone else who qualified as an insured under your policy was involved in a loss with an Uninsured or Underinsured Motorist while your policy was in effect and sustained damages, please contact us . . . to discuss whether you might have coverage or benefits available to you for this loss . . . .

(Doc. 107-G, at 1–2.) Plaintiffs contend that all three notices were confusing and misleading in contravention of the law. (*See* 4th Am. Compl. ¶ 20; Doc. 155, at 2.)

Plaintiffs Delbert and Maxine Soseeah (Plaintiffs)[2] contend that they are "unsophisticated insurance consumers for whom the protections of the New Mexico Insurance Code and the benefits of the *Jordan* and *Weed Warrior* decisions were intended." (Doc. 155, at 6.) Plaintiff Delbert Soseeah was injured in a vehicular accident in May 2009. (4th Am. Compl. ¶ 10.) At the time of the collision, Plaintiffs had two insurance contracts (both paid in full): one with Defendant Sentry

---

[2] Plaintiffs admit that Plaintiff John Borrego did not receive any of the three notices, and they no longer seek to have him appointed as a representative of either subclass. (Doc. 155, at 5 n.3.)

Insurance Co. and another with Defendant Dairyland Insurance Co. (*Id.* ¶¶ 15–16.) The accident occurred in the relevant pre-*Jordan* time period, and New Mexico law required that all insurers provide liability coverage for UM/UIM claims to policyholders, their household members, and other occupants of insured vehicles, unless a valid written rejection of the coverage was incorporated into and made part of the policy. (*Id.* ¶ 18.)

According to the allegations in the Fourth Amended Complaint, Plaintiffs had never executed a valid rejection of UM/UIM coverage, and Defendant Sentry knew or should have known that Plaintiffs were entitled to reformation of the policies and UM/UIM claim coverage. (*Id.* ¶ 20.) Plaintiff Delbert Soseeah made a claim for UM/UIM benefits in a letter dated August 28, 2012. (*Id.* ¶ 21.) Defendant Sentry responded by providing documentation demonstrating UM/UIM coverage in the amount of $25,000/$50,000 per vehicle. (*Id.* ¶ 23.) Plaintiff Delbert Soseeah sent a second letter on September 6, 2012 with a time-limited demand, seeking full payment of UM/UIM benefits within eleven days of the demand. (*Id.* ¶ 24.) Defendant Sentry responded, asserting incorrectly that Plaintiffs had made a valid rejection of UM/UIM coverage. (*Id.* ¶¶ 25–27.) Sometime later, Defendant Sentry advised Plaintiffs' counsel that Plaintiffs were entitled to coverage, but incorrectly quoted the amount owed as only $25,000.[3] (Doc. 159, at 8.) Defendant Sentry eventually realized that it had made a clerical mistake on Plaintiffs' claim, and in fact did owe Plaintiffs $50,000 in UM/UIM coverage. (*Id.* at 7–8.) In the interim, however, Plaintiffs filed this lawsuit, seeking damages and class certification. (*Id.*) There are no allegations that Defendant Sentry has made (or Plaintiffs have accepted) an accurate offer of benefits.

---

[3] Because Plaintiffs had policies on two vehicles, it was possible to stack the UM/UIM coverage to receive $50,000 in benefits. (4th Am. Comp. ¶¶ 15–16.)

In their original complaint, Plaintiffs sought several types of damages: (1) compensatory damages to Plaintiffs and all class members; (2) punitive damages to Plaintiffs and class members; (3) damages to Plaintiffs and class members for Defendant Sentry's violation of Article 16 of the New Mexico Insurance Code; (4) treble damages for Defendant Sentry's unfair trade practices, permitted pursuant to N.M. Stat. Ann. §§ 57-12-1–26 (1978); (5) a declaratory judgment to establish the rights and obligations of the parties; (6) injunctive relief to enjoin Defendant Sentry from continuing to engage in such practices; (7) punitive damages; (8) costs; (9) pre- and post-judgment interest; and (10) costs and expenses including attorneys' fees for Plaintiffs and all class members. (Doc. 1-A, at 16.)

In their Fourth Amended Complaint, Plaintiffs revised their requests to include: (1) compensatory and punitive damages to Plaintiffs individually—not to class members; (2) a declaratory judgment to establish the rights and obligations of the parties; (3) injunctive relief to enjoin Defendant Sentry from continuing to engage in such practices; (4) injunctive relief compelling Defendant Sentry to give notice to all class members regarding UM/UIM benefits; and (5) costs and expenses including attorneys' fees for Plaintiffs and all class members. (4th Am. Compl. at 26.)

Plaintiffs filed a motion for class certification pursuant to Rule 23(b)(2) in December 2013. (Doc. 107.) The Court granted Plaintiffs' motion, and Defendant Sentry appealed. (Docs. 136, 141.) The Tenth Circuit reversed and remanded for further consideration of certification of the subclasses. *See Soseeah*, 808 F.3d at 813. Plaintiffs' second motion for certification is now ripe and ready for decision.

## II.    Legal Standard

Plaintiffs' proposed subclasses must "independently meet[] the standards of Rule 23 class certification." *Robinson v. Gillespie*, 219 F.R.D. 179, 183 (D. Kan. 2003) (citing *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (internal citation omitted)). "Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Under Rule 23(a), Plaintiffs must satisfy four prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable [numerosity];
> (2) there are questions of law or fact common to the class [commonality];
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and
> (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

Fed. R. Civ. P. 23(a). Plaintiffs must also show that the proposed class satisfies "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc.*, 564 U.S. at 345. Here, Plaintiffs "rely on Rule 23(b)(2), which applies when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Id.* at 345–46 (quoting Fed. R. Civ. P. 23(b)(2)).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* at 350. To ensure Plaintiffs have met the requirements of Rule 23(a), the Court will need to conduct "a rigorous analysis," often looking to "the merits of the plaintiff's underlying claim." *Id.* at 350–51 (citations omitted).

### III.     Discussion Regarding Rule 23(a)

Defendant Sentry challenges whether Plaintiffs have met the commonality, typicality, and adequacy prerequisites of Rule 23(a); it does not challenge the numerosity element. (*See* Doc. 159.) Because the Court agrees Plaintiffs have not met the adequacy requirement, it will deny Plaintiffs' motion to certify.

### A.     Commonality

Plaintiffs must establish that "questions of law or fact common to the class" (or subclass) exist. Fed. R. Civ. P. 23(a)(2). Each subclass must raise a common contention "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Plaintiffs contend that the uniform notices Defendant Sentry sent to the two subclasses provide the common questions of fact. (Doc. 155, at 10.) The common questions of law, assert Plaintiffs, are whether those uniform notices were lawful, and if not, what the legal ramifications are of Defendant Sentry's actions. (*Id.*)

Defendant Sentry argues that Plaintiffs' subclasses should not be certified because the members have not all suffered the same injury. (Doc 159, at 10.) Defendant contends that the "injury" Plaintiffs claim is a lack of information about purported UM/UIM benefits, and that an injury in this context would require an insurance claim with the possibility of damages. (*Id.* at 11–12.) The Court disagrees: the injury does not arise out of a *lack* of information, but from the act of mailing notices containing allegedly *false or misleading* information. While "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[,]'" *Soseeah*, 808 F.3d at 808 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)), this does not mean that the class members must all exhibit the same damages. *See In re Deepwater*

8

*Horizon*, 739 F.3d 790, 810 (5th Cir. 2014) (finding that the contention "central to the validity of each class member's claims . . . need not relate specifically to the damages component of the class members' claims"). "Even an instance of injurious conduct, which would usually relate more directly to the defendant's liability than to the claimant's damages, may constitute 'the same injury.'" *Id.* at 810 (discussing *Wal-Mart Stores, Inc.*, 564 U.S. 338 at 350) (noting that the Supreme Court confirmed this concept in *Wal-Mart*, where it said that "discriminatory bias on the part of the same supervisor[,]" a type of injurious conduct but not a type of damages, would satisfy "the 'same injury' test for commonality"). The injurious conduct here was Defendant Sentry's affirmative act in mailing its insureds allegedly misleading notices regarding UM/UIM benefits.

For purposes of commonality for the subclasses as they are currently crafted, it is irrelevant whether every member of the subclasses will have valid claims for UM/UIM benefits. "'[E]very member of the class need not be in a situation identical to that of the named plaintiff' to meet Rule 23(a)'s commonality or typicality requirements." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010) (quoting *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982) (internal citation omitted)). "Factual differences between class members' claims do not defeat certification where common questions of law exist." *Id.* (citing *Milonas*, 691 F.2d at 938 (internal citation omitted)).

Rather than focusing on damages, the Tenth Circuit found that the more pressing question is "whether the plaintiffs have alleged the violation of any recognized legal duty on the part of Sentry." *Soseeah*, 808 F.3d at 809. "[A] claim of injury is not cognizable unless it results from the breach of a recognized legal duty owed to the plaintiff." *Id.* (quoting *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889 (7th Cir. 2011 (internal citations omitted)). To that end, Plaintiffs

identify three separate bodies of law they allege gave rise to the legal duties that Defendant Sentry violated with its misleading notices: the UPA, contract law, and tort law. (Doc. 155, at 11–19.)

## 1.    The UPA

"The UPA prohibits certain types of acts that occur 'in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce.'" *Soseeah*, 808 F.3d at 810 (quoting N.M. Stat. Ann. § 57-12-2(D) (1978) ("defining the phrase 'unfair or deceptive trade practice'")). The Tenth Circuit held that Defendant Sentry did not violate the UPA in failing to notify insureds of the New Mexico Supreme Court decisions. *Id.* Plaintiffs allege here, though, that in mailing misleading notices to its insureds, Defendant Sentry engaged in acts that were connected to the sale of the insurance contracts, even though those acts occurred sometime after the actual sales transactions. (Doc. 155, at 12.) Specifically, Plaintiffs contend that the misleading notices regarding UM/UIM benefits constituted a "failure to deliver the quality or quantity of goods or services contracted for[,]" one of the specific types of harm defined in the UPA. (4th Am. Compl. ¶ 62 (citing § 57-12-2-(D)(17)).)

The New Mexico Court of Appeals has found that an insured validly stated a claim under the UPA in a lawsuit against the insurer and a separate company that handled the insurance claim. *See Dellaira v. Farmers Ins. Exch.*, 102 P.3d 111, 112–13, 117 (N.M. Ct. App. 2004). The plaintiffs in *Dellaira* had "filed a claim for vehicle damage" and brought suit because of the way it was handled. *Id.* at 112–13. The plaintiffs alleged that defendant Farmers Insurance Exchange (FIE), the company that handled the claim (but did not sell the insurance policy to plaintiffs), had "an ongoing relationship with a loss valuation company that FIE knew offered lower than a fair actual cash value or replacement value of an insured's total loss vehicle." *Id.* (quotation marks omitted). *Id.* at 112, 117. The court noted that "the service at issue [was] the provision of insurance

coverage with indemnification after a loss." *Id.* at 117. The court construed the provision of insurance coverage, therefore, as an activity that was connected with the sale of services under the UPA. *Id.* Specifically, it noted that the harm involved was that described in subparagraph 17: "failure to deliver the quality or quantity of goods or services contracted for . . . ." *Id.* (quoting § 57-12-2(D)(17)).

Defendant Sentry's act of mailing its insureds information about theretofore unknown benefits under their policies was also an activity connected with the sale of services under the UPA. Just as valuation was relevant to the insurance claim in *Dellaira*, so too was notice of UM/UIM benefits to the insureds here—many of whom may have had insurance claims they did not make, but may have if they had received clear information from Defendant Sentry. New Mexico courts "have utilized a broad construction of the element 'in connection with the sale of goods or services.'" *Maese v. Garrett*, 329 P.3d 713, 720 (N.M. Ct. App.), *cert. denied sub nom.*, 328 P.3d 1187 (N.M. 2014) (quoting *Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091, 1097 (N.M. Ct. App.), *cert. denied*, 166 P.3d 1088 (N.M. 2007) (internal quotation omitted); citing *State ex rel. Stratton v. Gurley Motor Co.*, 737 P.2d 1180, 1185 (N.M. Ct. App. 1987) ("Because the Unfair Practices Act constitutes remedial legislation, we interpret the provisions of this Act liberally to facilitate and accomplish its purposes and intent.") (internal citations omitted)); *see also Ashlock v. Sunwest Bank of Roswell, N.A.*, 753 P.2d 346, 348 (N.M. 1988) ("[W]e ensure that the Unfair Practices Act lends the protection of its broad application to innocent consumers."), *overruled on other grounds by Gonzales v. Surgidev Corp.*, 899 P.2d 576 (N.M. 1995). The *Maese* court explained that New Mexico courts "have . . . rejected the argument that this ["in connection with the sale"] element can only be satisfied upon a showing that the defendant made a misrepresentation in the course of selling a product or services to the plaintiff." *Maese*, 329 P.3d

11

at 720 (quoting *Lohman*, 166 P.3d at 1097 ("[The UPA] does [not] require a misrepresentation *in the course of* a sale between [the] plaintiff and [the] defendant; it merely requires that a misrepresentation be 'made *in connection with* the sale . . . of goods [or services]' generally.")).

Under the facts alleged in the Fourth Amended Complaint, the Court finds it is possible for Plaintiffs to demonstrate the four elements necessary "to establish a violation of the UPA: (1) the defendant made a false statement, (2) the defendant made the statement in connection with the 'sale . . . of . . . services' and knew that the statement was false, (3) the defendant made the statement in the regular course of trade or commerce, and (4) the statement was one which 'may, tends to, or does[ ] deceive or mislead any person.'" *Dellaira*, 102 P.3d at 117 (quoting *Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311 (1991) (internal quotations omitted)). Here, the service relates to the act of mailing disclosures regarding insurance coverage. "Assuming the facts as pleaded are true, Plaintiffs could show that the" three notices were misleading under the UPA and that Defendant Sentry knew the notices were misleading. *See id.* Plaintiffs could also demonstrate that the notices were mailed in the regular course of trade or commerce, and that the statements tended to deceive or mislead a person.[4] *See id.* Whether Defendant's conduct in mailing the misleading notices constitutes an "injury" is a common question of law sufficient to satisfy Rule 23(a)(2) with respect to the subclasses as they are currently crafted. The Court finds that Plaintiffs have satisfied the requirements to demonstrate commonality with respect to their claim under the UPA.

---

[4] Defendant Sentry makes other arguments that are more relevant to a determination of whether the class action may be maintained under Rule 23(b)(2), and the Court will address them in Section IV.

## 2. Contract Law

Plaintiffs contend that Defendant Sentry's behavior in sending out misleading notices also breached the insurance contract it entered into with each of the insureds in the subclasses. (Doc. 155, at 15–17; *see also* 4th Am. Compl. ¶¶ 79–81.) Specifically, the insurance policies contained the following language: "We will automatically give you the benefits of any extension or broadening of this policy if the change does not require additional premium." (Doc. 155, at 15 (quoting Doc. 6-1, at 14).) By sending misleading and confusing notices regarding the broadening of benefits the insureds were entitled to after *Jordan* and *Weed Warrior*, Plaintiffs assert, Defendant Sentry violated this express language. (*Id.*)

The Tenth Circuit previously found no breach of contract because Plaintiffs did not identify any contract language that required Defendant Sentry to notify the general class of the import of the two decisions. *Soseeah*, 808 F.3d at 810–11. The situation is different for the subclasses, however, because Defendant Sentry sent them information relevant to their policies. "Here we have an [insurance company] affirmatively" misrepresenting the state of the law as applied to its insureds' benefits "recoverable under the uninsured motorist provisions of the policy." *Hendren v. Allstate Ins. Co.*, 672 P.2d 1137, 1140 (N.M. Ct. App. 1983). Defendant Sentry "should have realized that the [insureds] would rely on the representation[,]" *id.*, particularly where the IMPORTANT and FINAL Notices said that the "[f]ailure to sign and return the enclosed form will result" in a premium increase. (Docs. 107-E, at 1; 107-F, at 1.)

This result is in line with New Mexico authority, which finds that "a misstatement is material if it takes away the party's opportunity to estimate his risk under the contract." *Hendren*, 672 P.2d at 1140 (citation omitted). A fact finder could find here that the language Defendant Sentry used in the three notices was material. *See id.* It may be true, as Defendant asserts, that the

contract provision Plaintiffs rely on is a self-executing provision, and Defendant was not required under the contract to notify the insureds of the relevant decisions. (Doc. 159, at 15.) But by mailing out the misleading information relevant to that provision, Defendant Sentry may have crossed the line into breach. Plaintiffs are not claiming a "lack of information about past policies as a purported breach[,]" as Defendant Sentry asserts (*id.* at 15), but a *misrepresentation* of information about benefits the insureds were entitled to—but were misled about—by Defendant.[5] *See O'Neel v. USAA Ins. Co.*, 41 P.3d 356, 363 (N.M. Ct. App. 2002) (finding no reversible error where court instructed jury that "it should find in USAA's favor if it found that O'Neel breached the insurance contract by engaging in material misrepresentations"). Whether Defendant's language in the notices constitutes a breach of contract sufficient to show an "injury" is a common question of law sufficient to satisfy Rule 23(a)(2)'s commonality requirement as the subclasses are currently crafted.

### 3.    Tort Law

Finally, Plaintiffs contend that Defendant Sentry violated New Mexico tort law, in that its misleading notices breached the "implied covenant of good faith and fair dealing that the insurer will not injure its policyholder's rights to receive the full benefits of the contract." *Soseeah*, 808 F.3d at 811 (quotation omitted). "New Mexico cases analyzing the implied covenant of good faith and fair dealing in insurance contracts reflect a strong public policy in favor of enforcing insurers' public obligation and restoring balance to the contractual relationship between the insurer and the

---

[5] Defendant Sentry makes much of the fact that the policies were automatically reformed. (Doc. 159, at 15.) But it is the Court's understanding (and the allegations in Plaintiffs' complaint bear this out) that any insured who had an accident pre-*Jordan* and was entitled to UM/UIM benefits would need to take some action to make a claim. (*See* 4th Am. Compl. ¶ 21 (describing the fact that Plaintiff Delbert Soseeah made a claim for UM/UIM benefits through counsel).) A jury may find that the language in at least two of the three notices was designed to discourage insureds from taking such an affirmative step. (Docs. 107-E, 107-F.)

insured." *Sherrill v. Farmers Ins. Exch.*, No. 33,859, 2016 WL 1133873, at *12 (N.M. Ct. App. Mar. 22, 2016). "The key principle underlying the covenant of good faith in an insurance contract is that the insurer treat the interests of the insured equally to its own interests." *Id.* at *9 (quoting *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 582 (10th Cir. 1998) (internal citation omitted)).

Plaintiffs assert that Defendant Sentry breached this duty in violating its duty to disclose. (Doc. 155, at 18.) "New Mexico case law recognizes that a party can only be held liable for the failure to disclose material facts when there is a duty to disclose." *Azar v. Prudential Ins. Co. of Am.*, 68 P.3d 909, 923 (N.M. Ct. App. 2003) (citation omitted). New Mexico common law recognizes a duty to disclose based on the implied covenant of good faith and fair dealing where there is an underlying contractual relationship. *Id.* at 924–25. "The implied covenant is aimed at making effective the agreement's promises. Thus, it is breached only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Id.* at 925.

Plaintiffs argue that Defendant Sentry breached this implied covenant by misleading its insureds into signing new forms without fully disclosing the UM/UIM benefits they were entitled to if they had been in accidents with uninsured/underinsured motorists. (Doc. 155, at 18–19.) Based on these allegations, a factfinder could find that Defendant Sentry's behavior injured its insureds' "rights . . . to receive the benefit of their agreement." *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 976 P.2d 1, 14 (N.M. 1998) (quotation omitted)). This "affirmative duty to act in order to prevent the denial of the other party's rights under the agreement . . . is commonly found in insurance cases." *Id.* (citing *Weber v. State Farm Mut. Auto. Ins. Co.*, 873 F. Supp. 201, 208 (S.D. Iowa 1994) ("duty to disclose coverage"); *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 86 (N.J. 1993) ("obligation to disclose unprotected risks"); *Patterson v. Bowie*, 237 A.D.2d 184 (N.Y.

App. Div. 1997) ("claim premised on duty to disclose information that might cause a prospective insured to forego insurance by keeping clear of the risk properly dismissed as repetitive of cause of action for breach of covenant"); *Miller v. Keystone Ins. Co.*, 586 A.2d 936, 941 (Pa. Super. Ct. 1991) ("duty to inform of potential for adversarial relationship if insurer knows insured is relying on its advice and counsel"), *rev'd on other grounds by* 636 A.2d 1109 (Pa. 1994)).

Defendant Sentry again argues that Plaintiffs cannot show a violation of the covenant without showing that the subclass members had valid claims for benefits.[6] (Doc. 159, at 16–17.) Defendant Sentry asserts that there is no injury where it did not charge additional premiums for the reformed coverage, and it had agreed to acknowledge (at no cost) the reformed coverage to insureds who presented UM/UIM claims. (*Id.* at 17.) But this argument misses the mark: assuming the facts in the complaint are true, Defendant Sentry's insureds may have had no idea they were even entitled to benefits, particularly in the case of Subclass 1, because the language in the notices gave little hint that extra benefits were available. A factfinder could find that by encouraging the insureds to return the signed forms and failing to fully disclose that they may have additional benefits under the two decisions, Defendant Sentry breached the implied covenant of good faith and fair dealing. *See Allsup's Convenience Stores, Inc.*, 976 P.2d at 14. Whether Defendant's language in the notices constitutes a breach of the implied covenant of good faith and fair dealing

---

[6] Defendant Sentry also raises an argument under *Curry v. Great Northwest Insurance Co.*, 320 P.3d 482 (N.M. Ct. App. 2013), alleging that Plaintiffs' claim for Subclass 2 fails because they have no right to a "better" notice than the one they received. (Doc. 159, at 17–18.) "*Curry* involved a different issue: whether New Mexico law requires an insurer to provide UM/UIM coverage options and the corresponding premium information on the written rejection form delivered to the insured." *Sinclair v. Zurich Am. Ins. Co.*, 141 F. Supp. 3d 1162, 1168 (D.N.M. 2015) (citing *Curry*, 230 P.3d at 484). The Court finds this case distinguishable from *Curry*, because Plaintiffs are not simply seeking a "better" notice, but one that is not *misleading*. Defendant Sentry does not have a *Curry* problem, but a *Jordan* problem, because "the '*Jordan* Court intended to require insurers to fully inform their insureds regarding UM/UIM coverage options and corresponding premium costs.'" *Id.* (quoting *Curry*, 320 P.3d at 488). Plaintiffs assert that the notice Defendant Sentry provided to Subclass 2 was something less than "fully" informational, in that the notice was misleading. (Doc. 162, at 12–13.) As before, *Curry* is inapposite.

16

sufficient to show an "injury" is a common question of law sufficient to satisfy Rule 23(a)(2) for the subclasses as they are currently crafted.

### B.     Typicality

"Rule 23(a)(3) requires the claims of Named Plaintiffs to be typical of the claims of the class they seek to represent. The interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality." *DG ex rel. Stricklin*, 594 F.3d at 1198 (citing *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982)). "Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198–99 (citing *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) (internal citation omitted)).

Defendant Sentry alleges that Plaintiffs have not alleged an "injury in fact," and so lack Article III standing. (Doc. 159, at 19–20.) "[C]lass representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirements of Rule 23." *Rector v. City & Cty. of Denver*, 348 F.3d 935, 950 (10th Cir. 2003) (citations omitted). Plaintiffs "must demonstrate the presence of three elements" to establish Article III (constitutional) standing: "(1) injury in fact . . . ; (2) a causal relationship between the injury and the challenged conduct . . . ; and (3) a likelihood that the injury will be redressed by a favorable decision . . . ." *Id.* at 942 (quoting *Bd. of Cty. Comm'rs v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) (internal quotation and subsequent citations omitted)).

Defendant Sentry raises several arguments concerning Plaintiffs' injuries.[7] Relevant to the typicality requirement, Defendant Sentry argues: (1) because Mrs. Soseeah's accident did not

---

[7] The main thrust of Defendant Sentry's standing argument is more relevant to whether Plaintiffs may seek equitable relief pursuant to Rule 23(b)(2), and the Court will address it in Section IV.

implicate UM/UIM benefits, her injury is not typical of Subclass 2; (2) Plaintiffs do not contend that Defendant Sentry charged them a premium for any reformed UM coverage; and (3) the clerical error that allegedly caused Defendant Sentry to reject Mr. Soseeah's claim for UM/UIM benefits is unique to him and not representative of the class. (Doc. 159, at 21–22.) The Court is not persuaded. As discussed in Section III(A), the Soseaahs' injuries are related to the allegedly misleading notice and are representative of the unnamed class members' injuries. Further, Defendant Sentry's attempt to allegedly underpay Mr. Soseeah's claim for benefits does not moot his claim, as he did not accept the inadequate payment. The Plaintiffs' claims are sufficiently typical of the claims of the subclasses as they are currently crafted to satisfy Rule 23(a)(3).

    **C.**    **Adequacy**

    "Rule 23(a)(4) requires the class representative fairly and adequately protect the interests of the class." *Clark v. State Farm Mut. Auto. Ins. Co.*, 245 F.R.D. 478, 485 (D. Colo. 2007), aff'd, 590 F.3d 1134 (10th Cir. 2009). "The 'requirement of adequacy of representation must be stringently applied because members of the class' may be bound by the outcome of class litigation even though they may be unaware of the proceedings." *Id.* (quoting *Albertson's, Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459, 463–64 (10th Cir. 1974)). "Adequacy is determined by resolution of two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Id.* (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (internal quotation and citation omitted)).

    Defendant Sentry questions Plaintiffs' adequacy to represent the unnamed class members, because those class members may later face issues related to res judicata and/or collateral estoppel if Plaintiffs fail to seek monetary damages as part of the class action. (*See* Doc. 166, at 2–4.) The

Court finds that certification partially hinges on this issue, as the damages Plaintiffs have requested on behalf of the class are inadequate to protect the unnamed members' interests.

In their supplemental brief, Plaintiffs claim that "the core of the relief sought on behalf of the class [is] declaratory and injunctive relief, not damages." (Doc. 165, at 2.) Without "sacrificing their already-ripened" claims for monetary damages (*id.*), "[t]he named plaintiffs have agreed to forego compensatory damages on a classwide basis to increase the likelihood of class certification." *Colindres v. QuitFlex Mfg.*, 235 F.R.D. 347, 375 (S.D. Tex. 2006). (*See also* Doc. 165, at 2 ("Plaintiffs concluded that seeking class-wide damages under Rule 23(b)(3) could result in undesirable complications . . . .").) Plaintiffs seek an injunction requiring Defendant Sentry to send notice to all unnamed class members advising them of the effect of the *Jordan* and *Weed Warrior* decisions on their UM/UIM coverage. Plaintiffs acknowledge that such an injunction "is likely to ultimately result in individual claims for UM/UIM benefits by" unnamed class members. (*Id.* at 3.) Plaintiffs fail to recognize that "[a] decision not to pursue claims for compensatory damages in a class action may waive that claim on behalf of the individual class members." *Colindres*, 235 F.R.D. at 375.

"As a general rule, the decision in a class action is binding on the parties in subsequent decisions." *Id.* (citing *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) (internal citations omitted)). "Basic principles of res judicata (merger and bar or claim preclusion) and collateral estoppel (issue preclusion) apply. A judgment in favor of the plaintiff class extinguishes their claim, which merges into the judgment granting relief." *Id.* (quoting *Cooper*, 467 U.S. at 874). "If the plaintiffs prevail in their proposed class action, the court may not award compensatory relief [on behalf of the unnamed plaintiffs] because the [named] plaintiffs have

19

chosen not to seek it." *Id.* "The preclusive effect of the class action could prevent class members from seeking those damages in an individual lawsuit." *Id.* (citations omitted).

"In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006), the court held that a representative plaintiff's decision to seek statutory but not compensatory damages did not defeat certification, but the court clarified that the compensatory damages at issue, 'if any, [were] likely to be small' and hard to quantify." *Id.* (citing *Murray*, 434 F.3d at 952–53). "The court noted that a representative plaintiff should be allowed to forego claims for compensatory damages to achieve class certification '[u]nless a district court finds that personal injuries are large in relation to statutory damages.'" *Id.* (quoting *Murray*, 434 F.3d at 953). The UPA, the statute relevant to this suit, does not appear to provide for any statutory damages for class members, only actual damages. *See* N.M. Stat. Ann. § 57-12-10(E)[8]; *see also Brooks v. Norwest Corp.*, 103 P.3d 39, 53 (N.M. Ct. App. 2004) ("any relief realized by class members is limited to actual damages; they are barred from collecting statutory or treble damages") (citing § 57-12-10(E)). Actual damages include UM/UIM benefits, which are tied to each class member's policy. In the Soseeahs' case, the actual damages are alleged to be $50,000.

"Other courts have found class representatives who are willing to risk waiving absent class members' compensatory damages inadequate under Rule 23(a)(4)." *Id.* (citing *Zachery v. Texaco Expl. & Prod., Inc.*, 185 F.R.D. 230, 243 (W.D. Tex. 1999) ("The decision by the named Plaintiffs to drop the monetary damages claim cannot be imposed upon the absent class members without raising a very serious conflict of interest. This conflict prevents certification of the proposed class for the claims as stated."); *Miller v. Balt. Gas & Elec. Co.*, 202 F.R.D. 195, 203 (D. Md. 2001)

---

[8] Section 57-12-10(E) provides that in a class action filed under the UPA, "the court may award damages to the named plaintiffs as provided in Subsection B of this section and may award members of the class such actual damages as were suffered by each member of the class as a result of the unlawful method, act or practice."

("refusing to allow plaintiffs to amend complaint to remove claim for damages because 'the proposed removal of the compensatory and punitive damages claims raises serious questions regarding the ability of the named plaintiffs to represent the putative class adequately'")). The Court finds these latter cases persuasive.

Were "a positive injunction requiring Defendants to notify the class members[] of their rights to coverage and of Defendants' violations of [the] law" sufficient to redress the unnamed class members' injuries (as Plaintiffs suggest) (Doc. 165, at 2), the Court doubts Plaintiffs would have crafted the certification in such a way as to protect their own rights to monetary damages. For this reason, the Court will not grant Plaintiffs' motion to certify.

## IV.    Discussion Regarding Rule 23(b)(2)

"Rule 23(b)(2) allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Wal-Mart Stores, Inc.*, 564 U.S. at 360 (quoting Fed. R. Civ. P. 23(b)(2)). There are several requirements plaintiffs must meet in order to certify under Rule 23(b)(2), *see DG ex rel. Stricklin*, 594 F.3d at 1199–1200, but the Court finds it unnecessary to spend time on those when Plaintiffs' motion to certify pursuant to Rule 23(b)(2) fails for two main reasons: (1) Plaintiffs lack standing to pursue the equitable relief they seek on behalf of the two subclasses; and (2) the equitable relief Plaintiffs seek is not a "final" remedy. (*See* Doc. 159, at 19–20, 22–23.)

### A.    Plaintiffs lack standing to seek equitable relief.

The Tenth Circuit makes clear that the "named plaintiffs in a class action seeking prospective injunctive relief must demonstrate standing by establishing they are suffering a continuing injury or are under an imminent threat of being injured in the future." *DG ex rel.*

*Stricklin*, 594 F.3d at 1197 (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *see also Williams v. Foremost Ins. Co.*, 102 F. Supp. 3d 1230, 1241 (D.N.M. 2015) (where plaintiff seeks declaratory and injunctive relief, she "must demonstrate *continuing* illegal actions or continuing consequences to herself") (citing *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495–96 (10th Cir. 1998) ("defendants not immune from plaintiff's claims 'insofar as she is seeking a future injunction ordering her admission to university'"); *Johnson v. Lally*, 887 P.2d 1262, 1266 (N.M. Ct. App. 1994) ("[I]t is clear that past wrongs, even unconstitutional wrongs, do not create a foundation for declaratory relief without either continuing illegal actions or continuing consequences to Plaintiff.") (internal citations omitted)). Plaintiffs must do more than merely assert they were wronged in the past by Defendant Sentry. *Williams*, 102 F. Supp. 3d at 1241.

The equitable relief Plaintiffs seek is designed to provide redress for the injurious acts Plaintiffs assert on behalf of all class members: sending misleading notices. (*See* Doc. 165, at 4.) With respect to the relevant act (sending out the notices) and the corresponding injury (receipt of allegedly misleading information), Plaintiffs have made allegations sufficient to show that they were "injured in the past, [but] there is no evidence suggesting that they are" suffering from the alleged injury now, nor is there reason to believe that they will be injured in the future from Defendant Sentry's past act of sending out the misleading notices. *See Morris v. Davita Healthcare Partners, Inc.*, 308 F.R.D. 360, 368 (D. Colo. 2015) (determining that where injury was "the denial of complete and accurate information about [putative members'] medical history, treatments, and course of care[,]" the named plaintiffs no longer suffer from the injury where they have knowledge they were previously denied; thus, they lack standing to represent the class) (quotation omitted).

In *Williams*, for example, the plaintiff was a guest in the home of a person insured by the defendant insurance company. *Williams*, 102 F. Supp. 3d at 1233. The plaintiff alleged that the

defendant violated New Mexico law "by interviewing her too soon after her slip and fall[,]" and she sought prospective injunctive relief, asking that the insurance company be enjoined "from contacting injured New Mexicans in violation" of the law. *Id.* The court noted it was unlikely that the situation would ever present itself again, but if it did, the plaintiff "could simply refuse to speak with [the] adjusters." *Id.* at 1241.

Plaintiffs assert that Defendant Sentry's reliance on *Williams* is misplaced, and imposing a "future harm" requirement would be "an unduly restrictive [and unwarranted] interpretation of the [UPA's] statutory language . . . ." (Doc. 162, at 7.) The Court disagrees. Despite *Williams'* differing factual circumstances, it is an established legal principle that a plaintiff must show a continuing injury or threat of future harm in order to have standing for equitable relief. That principle is separate from and in addition to the requirements to request equitable relief pursuant to the UPA.[9] "*City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983), established that a plaintiff seeking injunctive relief premised upon an alleged past wrong must demonstrate a 'real and immediate threat' of repeated future harm to satisfy the injury in fact prong of the standing test. This requirement is independent of the substantive requirements for equitable relief." *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1333 (N.D. Cal. 1994) (citing *Lyons*, 461 U.S. at 111); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.").

---

[9] What's more, "[t]he UPA expressly provides that a person "*likely to be damaged*" under the UPA may be granted an injunction 'under the principles of equity and on terms that the court considers reasonable.'" *Casados v. Safeco Ins. Co. of Am.*, No. CIV 10-751 JAP/SMV, 2014 WL 11511720, at *14 (D.N.M. Mar. 5, 2014) (quoting N.M. Stat. Ann. § 57-12-10(A)).  Therefore, it is not, as Plaintiffs assert, a restrictive or unwarranted interpretation of the UPA's language to require continuing injury or threat of future harm in order to obtain equitable relief pursuant to this statute.

The Court finds another case illustrative to hammer home why Plaintiffs cannot demonstrate a continuing injury. In *Owen v. Regence Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1318, 1328 (D. Utah 2005), the plaintiff sought an injunction requiring (among other things) that an insurance company "disclose its method of calculating eligible medical expenses with respect to [certain] services" and cease to use a "disputed clause in the future . . . ." *Id.* at 1327. The *Owens* court noted that the plaintiff was not "seeking injunctive relief to prevent past wrongs from reoccurring. If [she] were she would have to 'demonstrate a good chance of being likewise injured in the future.'" *Id.* at 1328 (quoting *Facio v. Jones*, 929 F. 2d 541, 544 (10th Cir. 1991)). But the plaintiff was no longer insured by the company. *Id.* The court explained that if she had been suing from the position of a past insured injured by the company, "it is unlikely she could make this showing." *Id.* Instead, the plaintiff alleged "a new harm based on her position as a prospective purchaser of insurance." *Id.* As such, she was able to demonstrate that there was a chance she could be injured by the company in the future. *Id.* Plaintiffs are not bringing claims as prospective purchasers, but as previous insureds who were harmed by Defendant Sentry. They are simply unable to show continuing, adverse effects due to the allegedly misleading notices that would give them standing to seek equitable relief.

**B.** **The equitable relief Plaintiffs seek is not a final remedy, nor are potential monetary damages incidental.**

A class action brought pursuant to Rule 23(b)(2) "must be primarily one for equitable relief," and that relief must be "final." *Atwell v. Gabow*, 248 F.R.D. 588, 595 (D. Colo. 2008); *see also Jamie S. v. Milwaukee Pub. Sch.*, 668 F. 3d 481, 499 (7th Cir. 2012). Plaintiffs request declaratory relief "that will establish the rights and obligations of the parties" as well as two injunctions: (1) one that prohibits "Defendant Sentry from continuing to engage in those practices

that violate its duties and contractual and legal obligations owed to the Plaintiffs and the" proposed class members; and (2) one that requires "Defendant Sentry to give notice to all class members of the effect of the *Jordan* and *Weed Warrior* decisions on their UM/UIM coverage . . . ." (4th Am. Compl. at 26.) Plaintiffs acknowledge that their requested equitable relief would inevitably result in claims for UM/UIM benefits by some of the unnamed class members. (Doc. 165, at 3.) "A court should be cautious to certify a 23(b)(2) class where significant monetary damages are available— and consequently may be made unavailable if class litigation is unsuccessful—because Rule 23(b)(2) does not provide class members with an absolute right of notice or the right to opt-out of the class" as Rule 23(b)(3) does. *Clark*, 245 F.R.D. at 486 (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 412–13 (5th Cir. 1998)). "Where the amount of damages available to each individual plaintiff is high, the presumed cohesiveness and homogeneity among class members that underlies the Rule 23(b)(2) class is less [than] certain[,] . . . 'thereby making class certification under (b)(2) less appropriate.'" *Id.* (quoting *Allison*, 151 F.3d at 413 (internal citations omitted)).

Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment. Plaintiffs assert that their requested equitable relief is "the most important relief sought on behalf of the class . . . ." (Doc. 165, at 2.) The Court finds this assertion to be contrived. Plaintiffs acknowledge that the results of such relief would inevitably produce monetary damage claims from unnamed class members. (*Id.*) What's more, Plaintiffs admit that "seeking class-wide damages under Rule 23(b)(3) could result in undesirable complications specific to the requirements for certification and notice under that subsection of Rule 23." (*Id.*) Plaintiffs are "not attempting to settle a controversy before it ripens into a legal liability, nor [are they] trying to terminate litigation. On the contrary, the [equitable] relief" they seek "would operate as a prelude

25

to or preparation for a myriad of individual damage claims." *Sarafin v. Sears, Roebuck & Co., Inc.*, 446 F. Supp. 611, 615 (N.D. Ill. 1978); *see also Jamie S.*, 668 F.3d at 499 ("[A] claim for class-wide injunctive and declaratory relief does not satisfy Rule 23(b)(2) if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only, and it would certainly not be final.") (citations omitted). The Court will not allow Plaintiffs to make an end run around the "undesirable complications" of Rule 23(b)(3) with an attempt to improperly certify under Rule 23(b)(2).

Like the plaintiffs in *Wal-Mart Stores, Inc. v. Dukes*, "the named plaintiffs declined to include [the unnamed class members'] claims for compensatory damages in their complaint. That strategy of including only [equitable] claims made it more likely that monetary relief would not 'predominate.'" 564 U.S. at 364. "But it also created the possibility"—as discussed above—"that individual class members' compensatory-damages claims would be *precluded* by litigation they had no power to hold themselves apart from." *Id.* The Supreme Court made clear that courts may not certify a class "where (as here) the monetary relief is not incidental to the injunctive or declaratory relief." *Id.* at 360. Monetary relief is not incidental where "each class member would be entitled to an individualized award of monetary damages." *Id.* at 361. Any eventual monetary damages claims for UM/UIM benefits will be individualized, because the calculations will depend on whether each insured had a qualifying accident and on each insured's policy limits. Plaintiffs' claims are not appropriate for certification under Rule 23(b)(2) pursuant to the clear mandate of *Wal-Mart Stores, Inc.*

The Court considered whether it would be possible to convert this class action into a hybrid so that Plaintiffs could certify under Rule 23(b)(2) for liability and 23(b)(3) for damages. *See, e.g.*,

26

*In re Motor Fuel Temperature Sales Practices Litigation*, 292 F.R.D. 652 (D. Kan. 2013). Ultimately, Plaintiffs' standing issues prevent such a solution from working. But even if Plaintiffs could demonstrate a continuing injury to establish standing for equitable relief, this is simply not an appropriate case for hybrid certification for the reasons discussed in this section. The relief Plaintiffs have requested on behalf of the class is inadequate to protect the unnamed members' interests, and the requested relief is not final. Consequently, certification under Rule 23(b)(2) is inappropriate. The Court hereby denies Plaintiffs' motion to certify without prejudice.

If Plaintiffs wish to continue this litigation as a class action, they will need to move to certify with revised class definitions under Rule 23(b)(3), notwithstanding the concomitant complications such a motion may bring. "Given the age of this case and the fact that the parties are obviously well versed regarding the class certification issues, this motion shall be filed by" September 19, 2016, and the Court will set an expedited briefing schedule. *See Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 304 F.R.D. 601, 617 (D. Colo. 2015). Defendant Sentry's response will be due no later than September 29, 2016, and Plaintiffs' reply will be due no later than October 11, 2016.

## V.    Conclusion

The Court finds that Plaintiffs have failed to meet their burden to show that the proposed subclasses meet the requirements of Rule 23(a) and (b)(2). Specifically, Plaintiffs have failed to meet the adequacy requirement of Rule 23(a)(4), Plaintiffs lack standing for the equitable relief they seek pursuant to Rule 23(b)(2), and the equitable relief they seek is not final, nor would any eventual monetary damage awards be incidental to the equitable relief. For the reasons discussed in this opinion, the Court denies their motion to certify.

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' Second Motion and Memorandum for Class Certification on Remand from the Tenth Circuit Court of Appeals (Doc. 155) is **DENIED**.


_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**